**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CALIFORNIA ASSOCIATION OF PRIVATE POSTSECONDARY SCHOOLS**, <br> Plaintiff, <br> v. <br><br> **ELISABETH DEVOS**, in her official capacity as Secretary of the Department of Education, and the **U.S. DEPARTMENT OF EDUCATION**, <br><br> Defendants, <br> and <br><br> **COMMONWEALTH OF MASSACHUSETTS** <br> One Ashburton Place <br> Boston, MA  02108; <br><br> **STATE OF CALIFORNIA** <br> 300 South Spring Street, Suite 1702 <br> Los Angeles, CA 90013; <br><br> **PEOPLE OF THE STATE OF ILLINOIS** <br> 100 West Randolph Street <br> Chicago, IL 60601; <br><br> **STATE OF IOWA** <br> 1305 E. Walnut St. <br> Des Moines, IA 50319; <br><br> **THE ATTORNEY GENERAL OF MARYLAND** <br> 200 St. Paul Place, 16th Floor <br> Baltimore, MD 21202; <br><br> **STATE OF NEW YORK** <br> 120 Broadway, 3rd Floor <br> New York, NY 10271; <br><br> **STATE OF OREGON** <br> 1162 Court Street, NE <br> Salem, OR 97301; <br><br> **COMMONWEALTH OF PENNSYLVANIA** <br> 564 Forbes Avenue <br> Pittsburgh, PA 15219; and <br><br> **DISTRICT OF COLUMBIA** <br> 441 4th Street, N.W., 6th Floor <br> Washington, DC 20001, <br><br> [Proposed] Defendant-Intervenors | Civil Action No. 17-999 (RDM) |

## MEMORANDUM IN SUPPORT OF THE STATE MOVANTS' MOTION TO INTERVENE

# TABLE OF CONTENTS

INTRODUCTION...........................................................................................................1

ARGUMENT ...............................................................................................................4

   I.   **THE STATE MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT**...........4

      A. The State Movants' Motion is Timely ...........................................................5

      B. The State Movants Have Important, Legally Protected Interests in This Action ............5

      C. The State Movants' Interests May Be Impaired Absent Intervention.............................8

      D. Existing Parties Do Not Adequately Represent The State Movants' Interests ..............9

      E. The State Movants Have Standing to Pursue This Action ............................................11

   II.  **IN THE ALTERNATIVE, THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT PERMISSIVE INTERVENTION**.....................................13

CONCLUSION ...............................................................................................................14

## TABLE OF AUTHORITIES

### CASES

*Akiachak Native Cmty. v. U.S. Dep't of Interior,*
  584 F. Supp. 2d 1 (D.D.C. 2008) ....................................................................... 11

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez,*
  458 U.S. 592 (1982) ....................................................................................... 12

*Crossroads Grassroots Policy Strategies* v. *Fed. Election Comm'n,*
  788 F.3d 312 (D.C. Cir. 2015) ........................................................................ 12

*E.E.O.C.* v. *Nat'l Children's Ctr., Inc.,*
  146 F.3d 1042 (D.C. Cir. 1998) ...................................................................... 13

*Forest Cty. Potawatomi Cmty. v. United States,*
  317 F.R.D. 6 (D.D.C. 2016) .................................................................... 8, 9, 11

*Fund For Animals, Inc. v. Norton,*
  322 F.3d 728 (D.C. Cir. 2003) ................................................................. passim

*Grayson v. AT&T,*
  15 A. 3d 219 (D.C. App. 2010) ......................................................................... 8

*Hodgson v. United Mine Workers of Am.,*
  473 F.2d 118 (D.C. Cir. 1972) ........................................................................... 6

*Jones v. Prince George's Cty., Maryland,*
  348 F.3d 1014 (D.C. Cir. 2003) ......................................................................... 5

*Karlin v. IVF Am., Inc.,*
  93 N.Y.2d 282 (N.Y. App. 1999) ...................................................................... 8

*Karsner v. Lothian,*
  532 F.3d 876 (D.C. Cir. 2008) .................................................................. 4, 5, 8

*Kraus v. Trinity Management Services, Inc.,*
  23 Cal. 4th 116 (Sup. Ct. 2000) ........................................................................ 8

*Massachusetts v. E.P.A.,*
  549 U.S. 497 (2007) ....................................................................................... 12

*Massachusetts v. Microsoft Corp.*,
   373 F.3d 1199 (D.C. Cir. 2004) ................................................................. 4

*Natural Res. Def. Council v. Costle*,
   561 F.2d 904 (D.C. Cir. 1977) ................................................................. 8

*Nuesse v. Camp*,
   385 F.2d 694 (D.C. Cir. 1967) ......................................................... 6, 9, 13

*Roane v. Leonhart*,
   741 F.3d 147 (D.C. Cir. 2014) ................................................................. 5

*Roeder v. Islamic Republic of Iran*,
   333 F.3d 228 (D.C. Cir. 2003) ............................................................... 11

*Safari Club Int'l v. Salazar*,
   281 F.R.D. 32 (D.D.C. 2012) ................................................................. 5

*Sierra Club v. Van Antwerp*,
   523 F. Supp. 2d 5 (D.D.C. 2007) ........................................................... 13

*Slaney v. Westwood Auto, Inc.*,
   366 Mass. 68 (1975) ............................................................................... 8

*Trbovich v. United Mine Workers*,
   404 U.S. 528 (1972) ............................................................................... 9

*U.S. v. American Tel. & Tel. Co.*,
   642 F.2d 1285 (D.C. Cir. 1980) ............................................................. 10

*WildEarth Guardians v. Nat'l Park Serv.*,
   604 F.3d 1192 (10th Cir. 2010) ............................................................... 9

*Wildearth Guardians v. Salazar*,
   272 F.R.D. 4 (D.D.C. 2010) ................................................................... 11

## STATUTES

28 U.S.C. § 1331 ................................................................................... 14

5 U.S.C. § 701 *et seq.* ............................................................................ 14

RULES AND REGULATIONS

34 C.F.R § 685.222(b) .................................................................................................. 2, 6

34 C.F.R § 685.222(e) .................................................................................................. 2, 6

34 C.F.R § 685.222(h) .................................................................................................. 2, 6

34 C.F.R. § 685.300 ...................................................................................................... 3, 7

81 Fed. Reg. 39,329 (June 16, 2016) ............................................................................. 2

81 Fed. Reg. 75,926 (Nov. 1, 2016) ............................................................................... 1

82 Fed. Reg. 6,253 (Jan. 19, 2017) ............................................................................... 1

Fed. R. Civ. P. 24(a)(2) ........................................................................................... passim

Fed. R. Civ. P. 24(b) .................................................................................................... 13

Fed. R. Civ. P. 24(c) ...................................................................................................... 4

OTHER AUTHORITIES

*Department of Education Budget Hearing Before the Subcomm. on Labor, Health and Human Servs., Educ. and Related Agencies of the H. Comm. on Appropriations*, 115th Cong. (2017) (statement of Betsy DeVos, Sec'y of Educ. of the United States) ........................................... 10

## INTRODUCTION

The Commonwealth of Massachusetts, the States of California, Illinois, Iowa, New York, and Oregon, the Commonwealth of Pennsylvania, the Attorney General of Maryland, and the District of Columbia, by and through its Attorney General, (the "State Movants") hereby submit the following memorandum of law in support of their Motion to Intervene as defendants as of right under Rule 24(a) of the Federal Rules of Civil Procedure and, alternatively, with the Court's permission under Rule 24(b). The regulations at issue in this case enhance the State Movants' ability to deter violations of their consumer protection laws and to obtain effective remedies for any such violations. These important and legally protected interests would be impaired if the California Association of Private Postsecondary Schools ("CAPPS") were to prevail, and these interests cannot and will not be represented adequately by the Defendants. Accordingly, the State Movants' timely Motion to Intervene satisfies Rule 24(a)'s requirements for intervention as of right.

At issue in this litigation are the Department of Education's (the "Department") final regulations governing loan forgiveness for student loan borrowers who have been deceived or cheated by their postsecondary institution. The challenged regulations (the "Borrower Defense Regulations") provide critical protections for federal student loan borrowers against misconduct by abusive postsecondary institutions, including for-profit schools, and deter those institutions from violating applicable consumer protection laws.

Following a comprehensive administrative process, the Borrower Defense Regulations were promulgated on November 1, 2016, with supplemental regulations promulgated on January 19, 2017. *See* 81 Fed. Reg. 75,926 (Nov. 1, 2016) and 82 Fed. Reg. 6,253 (Jan. 19, 2017). The State Movants participated extensively in the negotiated rulemaking at issue in this litigation,

serving on the negotiating committee and submitting comments to the Department throughout the process. *See* 81 Fed. Reg. 39,329 (June 16, 2016), at 39,333-34 (announcing Bernard Eskandari of the Office of the Attorney General of California as a member of the negotiating committee and Mike Firestone of the Massachusetts Office of the Attorney General as an alternate member of the negotiating committee).

The Borrower Defense Regulations that followed this administrative process create a legally significant status for state attorney general investigations and enforcement actions in the Department's borrower defense procedures. *See* 34 C.F.R § 685.222(b) (providing that a judgment obtained by a governmental agency against a postsecondary institution based on state law will give rise to a borrower defense to loan repayment); 34 C.F.R §§ 685.222(e)(7)(iii)(C), 685.222(h)(5)(iii)(C), and 685.206(c)(4)(iii) (providing that a state agency's issuance of a civil investigative demand against a school whose conduct resulted in a borrower defense will qualify as notice permitting the Secretary of Education to commence a collection action against the school). In sum, the Borrower Defense Regulations provide that a successful enforcement action against a school by a state attorney general entitles borrowers to obtain loan forgiveness, and entitles the Department to seek repayment of any amounts forgiven from the school.

By establishing a role for state agencies and attorneys general within the Department's regulatory framework, the Borrower Defense Regulations enhance the effectiveness of the State Movants' enforcement activities and provide critical assistance to the State Movants' efforts to combat unlawful conduct by for-profit institutions within their respective states. The State Movants are charged with the enforcement of their state consumer protection laws, which protect students from unfair and deceptive conduct by proprietary schools and colleges. In this capacity, the State Movants have expended considerable resources investigating and bringing enforcement

2

actions against for-profit schools that have violated those state laws. By incorporating state enforcement actions into the Department's determination of when to grant loan discharges and when to initiate corresponding collection actions against postsecondary institutions for the amounts discharged, the Borrower Defense Regulations enhance the State Movants' enforcement efforts: the regulations both raise the costs of schools' noncompliance with state consumer protection laws and facilitate an appropriate remedy—loan forgiveness—for such noncompliance. Additionally, by strengthening the Department's role in deterring abusive practices by postsecondary institutions, the Borrower Defense Regulations help preserve finite state enforcement resources.

Furthermore, the State Movants have a specific interest in the provisions at issue in CAPPS's Motion for a Preliminary Injunction, which would prohibit schools participating in the Federal Direct Loan Program from using mandatory predispute arbitration agreements and class action waivers. *See* 34 C.F.R. §§ 685.300(e)-(f). By enabling borrowers to pursue private lawsuits under state consumer protection laws, these provisions protect private rights of action that were designed to supplement state public enforcement efforts and bolster enforcement of state consumer protection laws.

The Borrower Defense Regulations provide critical protections for borrowers who were subjected to misleading and predatory practices by their postsecondary institutions and improve both the Department and States' ability to deter and combat harmful practices by these institutions. If CAPPS is successful in its efforts to overturn these regulations, the State Movants' interests in protecting their students, ensuring the efficacy of their enforcement endeavors, and preserving finite state resources will be harmed. For these reasons, the State Movants respectfully request that the Court grant them leave to intervene in this lawsuit.

3

**ARGUMENT**

## I.     THE STATE MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT

The State Movants satisfy the requirements for intervention as of right. Rule 24(a)(2) of

the Federal Rules of Civil Procedure, which governs motions for intervention as of right,

provides:

> On timely motion, the court must permit anyone to intervene who . . . claims an
> interest relating to the property or transaction that is the subject of the action, and
> is so situated that disposing of the action may as a practical matter impair or impede
> the movant's ability to protect its interest, unless existing parties adequately
> represent that interest.

The D.C. Circuit has articulated four requirements that a movant must meet to satisfy

Rule 24(a)(2): "(1) the application to intervene must be timely; (2) the applicant must

demonstrate a legally protected interest in the action; (3) the action must threaten to impair that

interest; and (4) no party to the action can be an adequate representative of the applicant's

interests." *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008). In addition, in the D.C.

Circuit, a movant seeking to intervene as of right must establish standing under Article III of the

United States Constitution. *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 732 (D.C. Cir.

2003).[1]

---

[1] The State Movants note that they have not filed a proposed pleading along with their Motion to Intervene. The
D.C. Circuit has rejected a hypertechnical reading of Rule 24(c), which calls on putative intervenors to serve on the
parties "a pleading that sets out the claim or defense for which intervention is sought." *See Massachusetts v.
Microsoft Corp.*, 373 F.3d 1199, 1236 n.19 (D.C. Cir. 2004) (rejecting the government's and Microsoft's claim that
the putative intervenors "may not intervene because they did not include with their motion to intervene 'a pleading
setting forth the claim or defense for which intervention is sought'" and citing with approval the government's
concession that "this Court and other courts have not be[en] hypertechnical" when applying Rule 24(c) (quoting
Fed. R. Civ. P. 24(c) (alteration in original)). The State Movants have filed the present Motion to Intervene early in
this litigation—before the Defendants have filed any pleadings—in recognition of timeliness concerns raised by
CAPPS's filing of a Preliminary Injunction motion.

### A.  The State Movants' Motion is Timely

The State Movants' Motion to Intervene satisfies Rule 24(a)(2)'s timeliness requirement. Determining whether a motion to intervene is timely requires "consideration of all the circumstances." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (internal quotation marks omitted). The primary goal of this inquiry is to "prevent[] potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *Id.*

The State Movants' Motion to Intervene has been filed soon after the outset of this litigation; the complaint was recently filed, on May 24, 2017, and the Defendants' Answer has not yet been filed. As this lawsuit is still in its early stages, permitting the State Movants to intervene would not unduly disrupt the present litigation. *See Fund For Animals, Inc.*, 322 F.3d at 735 (finding that a motion to intervene was timely when it was filed "less than two months after the plaintiffs filed their complaint and before the defendants filed an answer"); *Safari Club Int'l v. Salazar*, 281 F.R.D. 32, 42 (D.D.C. 2012) (finding that a motion to intervene was timely that was filed "three months after the Complaint was filed, about one month after the [defendant] filed its answer, and before any dispositive motions were filed").

### B.  The State Movants Have Important, Legally Protected Interests in this Action

The State Movants' important interests in this action satisfy the second requirement for intervention under Rule 24(a)(2). Rule 24(a)(2)'s second prong requires a movant to identify an interest "relating to the property or transaction that is the subject of the action." *Karsner*, 532 F.3d at 885. A movant seeking leave to intervene as of right "need only an 'interest' in the litigation—not a 'cause of action.'" *Jones v. Prince George's Cty., Maryland*, 348 F.3d 1014, 1018 (D.C. Cir. 2003). This requirement is premised on the understanding that "the interest of justice is best served when all parties with a real stake in a controversy are afforded an

opportunity to be heard." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972). To that end, the D.C. Circuit treats the interest requirement as "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967).

The State Movants have substantial, legally protected interests in this lawsuit. Under the Borrower Defense Regulations, enforcement actions and investigations undertaken by state attorneys general are afforded a legally significant status in the Department's borrower defense procedures. Within the framework established by these regulations, a successful enforcement action brought against a postsecondary institution by a state attorney general raising state law claims gives rise to a borrower defense to loan repayment. 34 C.F.R § 685.222(b). (A borrower may have a borrower defense where "a governmental agency [] has obtained against the school a nondefault, favorable contested judgment based on State or Federal law . . ."). A successful borrower defense to repayment may result in the Department's discharge of borrowers' remaining debt and reimbursement of previously collected amounts, and may empower the Department to initiate a collection proceeding against a school whose misconduct led to the borrower defense.  The provisions outlining the contexts in which the Department may undertake such collection actions against schools also incorporate state agency actions—the Department may only initiate collection proceedings where a school has notice of the borrower defense claim, and one of the forms of permissible notice is the issuance of a civil investigative demand by a state agency. 34 C.F.R §§ 685.222(e)(7)(iii)(C), 685.222(h)(5)(iii)(C), and 685.206(c)(4)(iii).

The incorporation of state enforcement actions and investigations in the Borrower Defense Regulations creates a partnership between the States and the Department that benefits

6

the State Movants in concrete ways. The State Movants are the entities responsible for enforcing

consumer protection laws in their respective States. In that role, the State Movants have

committed, and continue to commit, significant time and resources to investigating and bringing

enforcement actions against predatory for-profit institutions. By establishing that a successful

state law enforcement action qualifies as a borrower defense that may expose postsecondary

institutions to the Department's collection actions, the challenged regulations increase the costs

to postsecondary institutions of violating state consumer protection laws and thereby promote

greater compliance with these laws. Moreover, the regulations facilitate an effective remedy,

loan forgiveness, for violations of state law. In so doing, the Borrower Defense Regulations

enhance the effectiveness of the State Movants' enforcement efforts. These regulations also

benefit the State Movants by establishing a framework for the Department to combat more

aggressively the harms caused by predatory for-profit schools and to deter abusive conduct. Such

increased deterrence by the Department helps decrease the prevalence of consumer abuses in the

State Movants' respective States and thereby allows the State Movants to preserve finite

resources.

　　　　Furthermore, the State Movants have an interest in the timely implementation of the

particular provisions at issue in CAPPS's Motion for a Preliminary Injunction. CAPPS seeks to

enjoin the Department from implementing provisions of the Borrower Defense Regulations that

prohibit schools participating in the Federal Direct Loan Program from using mandatory

predispute arbitration agreements and class action waivers. *See* 34 C.F.R. §§ 685.300(e)-(f).

These provisions will enable borrowers to pursue private lawsuits under state consumer

protection statutes, and in so doing, benefit the State Movants' consumer protection enforcement

frameworks. By design, the consumer protection statutes that the State Movants are charged with

enforcing authorize private lawsuits not merely as tools to resolve private disputes, but as means to supplement government efforts and lead to greater enforcement of state laws.[2] The State Movants have an interest in the provisions of the Borrower Defense Regulations that will restore this important component of state consumer protection enforcement.

The State Movants' interests in maintaining the effectiveness of their enforcement efforts and safeguarding limited resources readily satisfy Rule 24(a)(2)'s interest requirement.

### C. The State Movants' Interests May Be Impaired Absent Intervention

The State Movants satisfy the Rule 24(a)(2) requirement that an intervenor must be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest" in the litigation. *Karsner*, 532 F.3d at 885. The "impairment of interest" inquiry of Rule 24(a)(2) "is not a rigid one." *Forest Cty. Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 10 (D.D.C. 2016). In determining whether this requirement is met, courts consider "the practical consequences of denying intervention." *Fund For Animals, Inc.*, 322 F.3d at 735 (citing *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977)). Moreover, "the interest of a prospective defendant-intervenor may be impaired where a decision in the plaintiff's favor would return the issue to the administrative decision-making process, notwithstanding the prospective intervenor's ability to participate in formulating any revised rule or plan." *WildEarth Guardians v. Jewell*, No. CV 16-1724 (RC), 2017 WL 598477, at *4

---

[2] The enactment of such private rights of action was often justified explicitly in terms of the need to supplement public enforcement. *See, e.g.*, *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 698–99 (1975) ("Chapter 93A contained no private remedy provisions when it was originally [enacted] . . . . Because of the inability of the [Consumer Protection] Division to handle all the complaints it was receiving, it became clear that private remedies were needed under c. 93A."); *Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 291 (N.Y. App. 1999) ("When section 349 was enacted in 1970, only the Attorney General was empowered to enforce it . . . . It soon became clear, however, that the broad scope of section 349, combined with the limited resources of the Attorney General, made it virtually impossible for the Attorney General to provide more than minimal enforcement." (internal quotation marks omitted)); *see also Grayson v. AT&T*, 15 A. 3d 219, 240 (D.C. App. 2011); *Kraus v. Trinity Management Services, Inc.*, 23 Cal. 4th 116, 126 (Sup. Ct. 2000).

(D.D.C. Feb. 14, 2017) (citing *WildEarth Guardians v. Nat'l Park Serv*., 604 F.3d 1192, 1199 (10th Cir. 2010)).

The State Movants were closely involved in the negotiated rulemaking process that gave rise to the regulations challenged in this lawsuit, both participating in the negotiations themselves and submitting comments throughout the administrative process. The result of the State Movants' efforts was a final regulation that enhances the effectiveness of State Movants enforcement efforts, provides greater protections for borrowers within each state, and increases deterrence of predatory practices that result in costly state enforcement actions. These benefits will be lost in the event that the CAPPS is successful in this litigation. Accordingly, the State Movants satisfy the "impairment of interest" requirements for intervention as of right.

### D.  Existing Parties Do Not Adequately Represent the State Movants' Interests

The State Movants' interests cannot be adequately represented by the existing parties to this litigation. As such, the State Movants satisfy the final prong of the Rule 24(a)(2) test for intervention as of right. This prong, which requires a putative intervenor to show that no party to the action can be an adequate representative of its interests, poses only a "minimal" burden on putative intervenors. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see also Forest Cty. Potawatomi Cmty.*, 317 F.R.D. at 11 ("[T]he putative intervenor's burden here is *de minimis*, and extends only to showing that there is a possibility that its interests may not be adequately represented absent intervention."). In fact, the D.C. Circuit has described this requirement as imposing a "burden on those opposing intervention to show the adequacy of the existing representation." *Nuesse*, 385 F.2d at 702. Accordingly, putative intervenors "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate

representation for the absentee." *Fund For Animals, Inc.*, 322 F.3d at 735 (quoting *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980)).

Recent actions and statements made by the Defendants raise serious concerns about the Defendants' ability to adequately represent the State Movants' interests in this litigation. At the June 6, 2017 status conference in this case, the Defendants' attorneys informed the Court that the Department is considering a change to the effective date of the challenged regulations. And, as noted by CAPPS in its Motion for a Preliminary Injunction, Secretary DeVos has publically stated that the Department is currently reviewing the Borrower Defense Regulations. *See*, Pl.'s Mot. For Prelim. Inj., ECF No. 6 at 1, 3, and 23. For instance, on May 24, 2017, Secretary DeVos testified before a U.S. House of Representatives subcommittee and cast doubt on the Department's commitment to the Borrower Defense Regulations, stating: "that regulation is something that we are studying carefully and looking at . . . ." *Department of Education Budget Hearing Before the Subcomm. on Labor, Health and Human Servs., Educ. and Related Agencies of the H. Comm. on Appropriations*, 115th Cong. (2017) (statement of Betsy DeVos, Sec'y of Educ. of the United States). The Secretary's suggestion that the Department is currently "studying" the already finalized regulation at issue in this case calls into question the Department's ability to represent the State Movants' interests in this matter.

Furthermore, while the ultimate objective of both the State Movants and the Defendants may be to defend the Department's Borrower Defense Regulations, their specific interests are not the same. State intervenors "have unique sovereign interests not shared by the federal government." *WildEarth Guardians*, 2017 WL 598477, at *4 (observing that "[s]everal previous cases have permitted intervention by states when the federal government was already a party"). In this case, the Defendants do not share the State Movants' interest in enhancing state

10

enforcement capabilities, nor do they share the State Movants' interest in the preservation of finite state resources. The interests of the Defendants therefore may "diverge during the course of litigation" from those of the State Movants. *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 19-20 (D.D.C. 2010) (Permitting the State of Wyoming to intervene in litigation brought against a number of federal agencies because, "although there are certainly shared concerns . . . , [t]he mere fact that other defendants might hypothetically take [the State's] interests into account when shaping their arguments does not mean that they would afford the same primacy to [the State's] interests . . ." (internal citations and quotation marks omitted)). Consequently, the Defendants cannot be expected to adequately represent the State Movants' specific interests in this matter.

### E. The State Movants Have Standing to Pursue This Action

In addition to satisfying the requirements of Rule 24(a)(2), the State Movants have standing under Article III of the United States Constitution. To establish standing under Article III, a prospective intervenor must show: (1) injury-in-fact, (2) causation, and (3) redressability. *Fund For Animals, Inc.*, 322 F.3d at 733.

The D.C. Circuit has noted that "any person who satisfies Rule 24(a) will also meet Article III's standing requirement." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003); *see also*, *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 1, 7 (D.D.C. 2008) (describing the standing inquiry in the assessment of intervention as of right as "repetitive" of the Rule 24(a) analysis). Generally, therefore, "when a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also meet constitutional standing requirements, and *vice versa*." *Forest Cty. Potawatomi Cmty.*, 317 F.R.D. at 11 n.4.

In the context of a litigant's motion to intervene as a defendant, the D.C. Circuit has "generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads Grassroots Policy Strategies* v. *Fed. Election Comm'n*, 788 F.3d 312, 317 (D.C. Cir. 2015). The State Movants face exactly this situation. As described above, the Department's finalized Borrower Defense Regulations benefited the State Movants by incorporating state enforcement actions in the Department's borrower defense framework and strengthening the Department's deterrence of predatory practices by postsecondary institutions. These regulations enhance the State Movants' enforcement efforts and protect limited state enforcement resources. If CAPPS is successful in challenging this decision, the State Movants will lose the benefits they gained from the Department's rulemaking.

In addition to the State Movants' interests in the strength of their enforcement schemes and the preservation of state resources, the State Movants' interests in the economic "health and well-being . . . of [their] residents" support Article III standing in this case. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982) ("[A] State has a quasi-sovereign interest in the health and well-being-both physical and economic-of its residents in general."). A State's "stake in protecting its quasi-sovereign interests" entitles the state "to special solicitude in [the Court's] standing analysis." *See Massachusetts v. E.P.A.*, 549 U.S. 497, 520 (2007).

The State Movants satisfy Article III's standing requirements and meet the requirements for intervention as of right under Rule 24(a)(2). The State Movants, therefore, should be permitted to intervene as of right in this matter.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT PERMISSIVE INTERVENTION

In the alternative, the State Movants respectfully request that this Court grant them permission to intervene in this suit pursuant to Rule 24(b) of the Federal Rules of Civil Procedure. Under Rule 24(b)(1)(B), the court may grant permissive intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact." District Courts are afforded "wide latitude" in determining whether to grant a motion for permissive intervention under Rule 24(b) of the Federal Rules of Civil Procedure. *E.E.O.C.* v. *Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). The D.C. Circuit has long recognized that, "[a]s its name would suggest, permissive intervention is an inherently discretionary enterprise." *Id.*

Permissive intervention requires a showing of: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *Sierra Club v. Van Antwerp,* 523 F. Supp. 2d 5, 10 (D.D.C. 2007). Additionally, when exercising its discretion, the court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998). The "force of precedent" in the D.C. Circuit "compels a flexible reading of Rule 24(b)." *Id.* at 1046. Courts allow intervention even "where the existence of any nominate 'claim' or 'defense' is difficult to find." *Nuesse*, 385 F.2d at 704 (internal quotation marks omitted).

The State Movants satisfy the requirements for permissive intervention. First, the State Movants seek to enter this litigation in order to defend the administrative action of the Department. Since this case involves a review of a federal administrative action based on federal law, the requirement for independent subject matter jurisdiction is met pursuant to

13

28 U.S.C. § 1331 and 5 U.S.C. §§ 701-706. Second, as set forth above, the State Movants'

motion is timely and will not delay this litigation. Third, the State Movants' defenses will share

common questions of both law and fact with the Parties' claims and defenses, as the State

Movants' and the Defendants' defenses will both involve consideration of the administrative

procedures resulting in the Borrower Defense Regulations and the constitutionality of these

regulations. And, finally, as the State Movants will be litigating defenses that share common

questions of law and fact with the Parties' claims and defenses, the State Movants' intervention

will not unduly delay or prejudice the rights of the original parties.

## **CONCLUSION**

For the above-stated reasons, the State Movants respectfully request that their Motion to

Intervene be granted. Additionally, while the State Movants do not seek to delay the Preliminary

Injunction briefing schedule set by the Court, the State Movants request the opportunity to be

heard at the Motion Hearing set for June 21, 2017.

SUBMITTED this 13th day of June, 2017.

FOR THE COMMONWEALTH OF
MASSACHUSETTS

MAURA HEALEY
ATTORNEY GENERAL

By: */s/ Yael Shavit*
Yael Shavit
Max Weinstein
Assistant Attorneys General
Office of the Massachusetts Attorney General
One Ashburton Place
Boston, MA 02108
(617) 963-2197 (Shavit)
(617) 963-2499 (Weinstein)
Yael.Shavit@state.ma.us
Max.Weinstein@state.ma.us

14

FOR THE STATE OF CALIFORNIA
XAVIER BECERRA
CALIFORNIA ATTORNEY GENERAL
Bernard A. Eskandari
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, California 90013
(213) 897-2652
bernard.eskandari@doj.ca.gov

PEOPLE OF THE STATE OF
ILLINOIS, by LISA MADIGAN
ATTORNEY GENERAL OF ILLINOIS
Joseph Sanders
Assistant Attorney General
Illinois Attorney General's Office
100 W. Randolph St., 12th Fl.
Chicago, IL 60601
(312) 814-6796
jsanders@atg.state.il.us

FOR THE STATE OF IOWA
THOMAS J. MILLER
ATTORNEY GENERAL
Jessica Whitney
Director - Consumer Protection
Office of the Attorney General of Iowa
1305 E. Walnut St.
Des Moines, Iowa 50319
Tel: (515) 281-8772
Jessica.Whitney@iowa.gov

BRIAN E. FROSH
ATTORNEY GENERAL OF MARYLAND
Christopher J. Madaio
Assistant Attorney General
Office of the Attorney General
Consumer Protection Division
200 St. Paul Place, 16th Floor
Baltimore, MD 21202
(410) 576-6585
Cmadaio@oag.state.md.us

15

FOR THE STATE OF NEW YORK
ERIC T. SCHNEIDERMAN
ATTORNEY GENERAL OF NEW YORK
Jane M. Azia
Chief, Bureau of Consumer Frauds and
Protection
120 Broadway, 3rd floor
New York, NY 10271
Tel.: (212) 416-8727
Jane.azia@ag.ny.gov

FOR THE STATE OF OREGON
ELLEN F. ROSENBLUM, ATTORNEY
GENERAL
Andrew Shull
Assistant Attorney General
Oregon Department of Justice
1162 Court Street, NE
Salem, OR 97301
Tel: 503-934-4400
Andrew.shull@doj.state.or.us

FOR THE COMMONWEALTH OF
PENNSYLVANIA
JOSH SHAPIRO
ATTORNEY GENERAL
Jesse Harvey
Senior Deputy Attorney General
Office of the Pennsylvania Attorney General
Bureau of Consumer Protection
6th Floor Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219
(412)565-2883
jharvey@attorneygeneral.gov

FOR THE DISTRICT OF COLUMBIA
KARL A. RACINE
ATTORNEY GENERAL FOR THE
DISTRICT OF COLUMBIA
Philip Ziperman
Office of Consumer Protection
441 4th Street, N.W., 6th Floor

16

Washington, DC 20001
(202) 442-9886
Philip.Ziperman@DC.gov