IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CALIFORNIA ASSOCIATION OF PRIVATE POSTSECONDARY SCHOOLS,<br><br>            Plaintiff,<br><br>v.<br><br>BETSY DEVOS, in her official capacity as Secretary of Education, and THE DEPARTMENT OF EDUCATION,<br><br>            Defendants. | Civil Action No. 1:17-cv-999(RDM) |

**DEFENDANTS' RESPONSE TO MOTION TO INTERVENE BY STATE MOVANTS**

The attorneys general of Massachusetts, California, Illinois, Iowa, Maryland, New York, Oregon, Pennsylvania, and the District of Columbia, moved to intervene as defendants on June 13, 2017. *See* Motion for Leave to Intervene, ECF No. 16; *see also* Memorandum in Support of the State Movants' Motion for Leave to Intervene at 12, ECF No. 16-1 ("Intervention Mem."). On June 29, 2017, the attorney general of Washington moved for leave to intervene, for substantially the same reasons cited by the other state movants in support of their earlier motion. *See* Motion for Leave to Intervene, ECF No. 31.

The states seek to intervene as of right, under Federal Rule of Civil Procedure 24(a), and in the alternative, permissive intervention under Federal Rule of Civil Procedure 24(b). *See* Intervention Mem. at 4, 13. A party seeking to intervene as of right must demonstrate that it has standing under Article III of the Constitution and that it can satisfy four factors: "(1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the

1

disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties." *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 731–32 (D.C. Cir. 2003) (citation omitted). Where, as here, a party seeks to intervene in order to uphold or defend agency action, it must establish: "(a) that it would suffer a concrete injury-in-fact if the action were to be set aside, (b) that the injury would be fairly traceable to the setting aside of the agency action, and (c) that the alleged injury would be prevented if the agency action were to be upheld." *Forest Cty. Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 11 (D.D.C. 2016).

For permissive intervention, "the putative intervenor must ordinarily present: (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

Defendants oppose the motion to intervene because the state movants have not identified any injury-in-fact that they would suffer if the Borrower Defense Regulations were set aside. The state movants' primary argument is that the Borrower Defense Regulations affect the range of potential remedies available to borrowers, increase deterrence against consumer abuses, and thus "enhance the effectiveness of [the states'] enforcement efforts." Intervention Mem. at 7. The Final Rule, however, specifically declined to create a dedicated process for state attorneys general to petition for loan discharges. *See* Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, William D. Ford Federal Direct Loan Program, and Teacher Education Assistance for College and Higher Education Grant Program, 81 Fed. Reg. 75926, 75940. Indeed, the purpose of the Final Rule was to create a uniform *federal* standard for borrower defense claims, and the Department declined to make

relief available under certain state statutes such as state Unfair, Deceptive or Abusive Acts and Practices statutes, because "[t]he Department's borrower defense process is distinct from borrowers' rights under State law," and the Department emphasized that "the specifics of the borrower defense process should not be taken to represent any view regarding other issues and causes of action under other laws and regulations that are not within the Department's authority." *Id.* at 75940-41.

Defendants do not deny that "the power to create and enforce a legal code" is a sovereign interest of a state, *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982), or that a state suffers Article III injury when the federal government seeks to preempt state law, *see Alaska v. U.S. Dep't of Transp.*, 868 F.2d 441, 443 (D.C. Cir. 1989). But in establishing conditions for the Direct Loan Program, the Department of Education does not interfere with or preempt a state's sovereign prerogative in enforcing its consumer protection laws, and invalidating the Borrower Defense Regulations would not have the effect of making state laws any more or less valid or enforceable on their own terms. *See Virginia ex rel. Cuccinelli v. Sebelius*, 656 F.3d 253, 269 (4th Cir. 2011) ("[O]nly when a federal law interferes with a state's exercise of its sovereign 'power to create *and enforce* a legal code' does it inflict on the state the requisite injury-in fact." (quoting *Snapp*, 458 U.S. at 601)).

Whether or when the Borrower Defense Regulations go into effect, state consumer protection laws will remain equally valid and enforceable, and states have the freedom to enforce those laws in the manner they see fit. States have no authority to compel the federal government to "enhance" a state's chosen enforcement system, Interven. Mem. at 7, or "combat more aggressively" the harms that enforcement system seeks to prevent, *id. See, e.g.*, *State of Ariz. v. Bowsher*, 935 F.2d 332, 334 (D.C. Cir. 1991) (noting that states may not, consistent with the

3

Supremacy Clause, "directly regulate the federal government's operations or property"). The federal government and the states might partner in preventing abuses to student borrowers, but they remain separate sovereigns, each retaining its own sovereign interest in the enforcement of its own laws. If the Borrower Defense Regulations do not go into effect, the only "benefit" the state will lose is an allegedly increased deterrent to the violation of their own laws and thus the ability "to preserve finite resources" that would otherwise be expended enforcing state law. *Id*. This asserted interest, however, cannot support Article III standing. *See Am. Soc'y. for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011) ("Under our case law, an organization's diversion of resources to litigation or to investigation in anticipation of litigation is considered a 'self-inflicted' budgetary choice that cannot qualify as an injury in fact for purposes of standing." (citing *Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1140 (D.C. Cir. 2011))); *see also Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995). Indeed, to say that the invalidation of the Borrower Defense Regulations would allegedly remove certain incentives to comply with state law is just another way of saying that invalidation would allegedly require a state to expend additional law enforcement resources to achieve the same level of compliance that would exist with the regulations in place. The states' efforts to categorize this case as one "where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit," Intervention Mem. at 12 (quoting *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 317 (D.C. Cir. 2015), thus begs the question and does not establish standing. The issue is whether the provision or deprivation of the "benefit" is cognizable under Article III, and it is not in this case.

The state movants further claim Article III standing based on the states' asserted "quasi-

sovereign" interests in the economic health and well-being of their residents. *See* Intervention Mem. at 12. It is well settled that in litigation involving the federal government, "the United States, and not the state, represents the people's interests." *Citizens Against Ruining The Env't v. E.P.A.*, 535 F.3d 670, 676 (7th Cir. 2008) (citing *Massachusetts v. Mellon*, 262 U.S. 447, 485–86 (1923) and *Ill. Dep't of Transp. v. Hinson*, 122 F.3d 370, 373 (7th Cir. 1997)); *see also Maryland People's Counsel v. FERC*, 760 F.2d 318, 320 (D.C. Cir. 1985) ("However, a State does not have standing as *parens patriae* to bring an action against the Federal Government.").

Finally, the state movants invoke the "special solicitude" for state standing referenced in *Massachusetts v. EPA*, 549 U.S. 497, 520–23 (2007), but in that case the Supreme Court drew a distinction "between allowing a State to protect her citizens from the operation of federal statutes (which is what *Mellon* prohibits) and allowing a State to assert its rights under federal law (which it has standing to do)." *Id*. at 1455 n. 17 (internal quotation marks omitted). The D.C. Circuit has emphasized the unique circumstances at issue in *Massachusetts v. EPA*, and limited the holding in that case to its facts. *See Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 476–77 (D.C. Cir. 2009) (noting that the Court afforded Massachusetts "special solicitude" based on the state's "interests in ensuring the protection of the land and air within its domain, and its well-founded desire to preserve its sovereign territory," and limiting the holding to the proposition that "where a harm is widely shared, a sovereign, suing in its individual interest, has standing to sue where that sovereign's individual interests are harmed, wholly apart from the alleged general harm") (citations omitted).[1] Nothing in *Massachusetts v. EPA*, which

---

[1] Plaintiffs cite *Wildearth Guardians v. Salazar*, 272 F.R.D. 4 (D.D.C. 2010), but in that case the court permitted intervention as-of-right because of the state's "role in regulating environmental quality within its borders, and ensuring that the development of coal mining operations within its territory continues in a safe and environmentally responsible manner." *Id.* at 18. A state's interest in regulating mining within its borders is obviously different from a state's interest in the

5

concerned a state's asserted interest in protecting its sovereign territory, supports the states' claim to standing in this case, based on the interests of their residents.

Because a defendant-intervenor seeking to intervene under Rule 24 "must demonstrate Article III standing," *Deutsche Bank Nat. Trust Co. v. F.D.I.C.*, 717 F.3d 189, 193 (D.C. Cir. 2013), defendants respectfully oppose the state movants' motion to intervene. In *Deutsche Bank*, the D.C. Circuit ruled that intervention under any aspect of Rule 24 requires Article III standing. *See* 717 F.3d at 193 ("[i]t is therefore circuit law that intervenors must demonstrate Article III standing."). Accordingly, the movants' "lack of standing renders them ineligible for permissive intervention," *Keepseagle v. Vilsack*, 307 F.R.D. 233, 246 (D.D.C. 2014), as well as for intervention as of right, *Deutsche Bank*, 717 F.3d at 193.[2] Defendants thus respectfully request that the Court deny the motion to intervene.

Dated:  July 10, 2017                    Respectfully submitted,

                                         CHAD A. READLER
                                         Acting Assistant Attorney General

                                         SHEILA LIEBER
                                         Deputy Branch Director

---

conditions that attach to funding under the Direct Loan Program, which is funded and overseen entirely by the Department of Education.

[2]  Defendants recognize that there is precedent within the D.C. Circuit treating the issue of whether standing is required for permissive intervention as "an open question." *See, e.g.*, *Abulhawa v. U.S. Dep't of Treasury*, --- F. Supp. 3d ----, 2017 WL 883609, at *9 (D.D.C. Mar. 4, 2017) (citing *Defenders of Wildlife v. Perciasepe*, 714 F.3d 1317, 1327 (D.C. Cir.  2013)). While defendants submit that *Deutsche Bank* addresses the requirements of Rule 24, defendants contend in any event that permissive intervention is inappropriate where, as here, the proposed intervenor cannot demonstrate an interest in litigation sufficient to confer Article III standing. *See In re Idaho Conservation League*, 811 F.3d 502, 514–15 (D.C. Cir. 2016) (determining that in light of proposed intervenors' failure to show Article III standing, they also failed to show "a claim or defense that shares with the main action a common question of law or fact," and denying permissive intervention).

>*/s/Thomas D. Zimpleman*
>THOMAS D. ZIMPLEMAN
>R. CHARLIE MERRITT
>Trial Attorneys
>U.S. Department of Justice
>Civil Division, Federal Programs Branch
>20 Massachusetts Ave. NW
>Washington, DC  20530
>Tel:  (202) 514-8095
>Fax:  (202) 616-8470
>E-mail: Thomas.D.Zimpleman@usdoj.gov
>
>*Counsel for Defendants*