# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CALIFORNIA ASSOCIATION OF PRIVATE POSTSECONDARY SCHOOLS, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ELISABETH DEVOS, in her official capacity as Secretary of the U.S. Department of Education, and the U.S. DEPARTMENT OF EDUCATION, | ) ) ) ) | Civil Action No. 17-999 (RDM) |
| | ) | |
| Defendants, | ) | |
| | ) | |
| MEAGHAN BAUER and STEPHANO DEL ROSE, | ) ) | |
| | ) | |
| [Proposed] Borrower Defendant-Intervenors, | ) | |
| | ) | |
| COMMONWEALTH OF MASSACHUSETTS, *et al.*, | ) ) | |
| | ) | |
| [Proposed] State Defendant-Intervenors. | ) | |

## REPLY IN SUPPORT OF THE BORROWERS' MOTION TO INTERVENE AS DEFENDANTS

Toby R. Merrill
Mass. BBO No. 601071
Amanda M. Savage
Mass. BBO No. 690938
Alec P. Harris
Colo. Bar No. 47547
PROJECT ON PREDATORY STUDENT LENDING,
LEGAL SERVICES CENTER OF HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
(617) 522-3003
tomerrill@law.harvard.edu

Julie A. Murray
D.C. Bar No. 1003807
Scott L. Nelson
D.C. Bar No. 413548
Adam R. Pulver
D.C. Bar No. 1020475 (D.D.C. admission pending)
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
jmurray@citizen.org

*Counsel for Proposed Defendant-Intervenors Meaghan Bauer and Stephano Del Rose*

July 26, 2017

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................. ii

I.      The Borrowers' Submissions Satisfy Rule 24(c). ..............................................................1

II.     The Borrowers Have Article III Standing. ........................................................................4

        A.      The Borrowers have demonstrated an injury-in-fact sufficient to defend the
                Regulations in full. ..............................................................................................5

        B.      The Borrowers have established causation and redressability. ............................11

III.    The Borrowers Qualify for Intervention of Right. ............................................................12

IV.     In the Alternative, the Borrowers Should Be Granted Permissive Intervention. ...............14

Conclusion ..........................................................................................................................17

# TABLE OF AUTHORITIES

## CASES

Page(s)

*100Reporters LLC v. DOJ*,
   307 F.R.D. 269 (D.D.C. 2014) ........................................................................15

*Aneke v. American Express Travel Related Services, Inc.*,
   841 F. Supp. 2d 368 (D.D.C. 2012) ..................................................................9

*Animal Legal Defense Fund v. Glickman*,
   154 F.3d 426 (D.C. Cir. 1998) .....................................................................11, 12

*Bauer v. DeVos*,
   No. 17-1330 (D.D.C. filed July 6, 2017) .....................................................2, 6, 13

*Bord v. Banco de Chile*,
   205 F. Supp. 2d 521 (E.D. Va. 2002) .............................................................10

*Center for Biological Diversity v. EPA*,
   274 F.R.D. 305 (D.D.C. 2011) .......................................................................16

*Citizens United v. FEC*,
   558 U.S. 310 (2010) ........................................................................................4

*Crossroads Grassroots Policy Strategies v. FEC*,
   788 F.3d 316 (D.C. Cir. 2015) .....................................................................5, 12

*Deutsche Bank National Trust Co. v. FDIC*,
   717 F.3d 189 (D.C. Cir. 2013) ........................................................................4

*In re Endangered Species Act Section 4 Deadline Litigation*,
   277 F.R.D. 1 (D.D.C. 2011) ...........................................................................15

*In re Endangered Species Act Section 4 Deadline Litigation-MDL No. 2165*,
   704 F.3d 972 (D.C. Cir. 2013) .....................................................................4, 15

*Fineman v. Sony Network Entertainment International LLC*,
   No. C 11-05680 SI, 2012 WL 424563 (N.D. Cal. Feb. 9, 2012) ........................10

*Fund for Animals, Inc. v. Norton*,
   322 F.3d 728 (D.C. Cir. 2003) .......................................................................13

*International Brotherhood of Electrical Workers, AFL-CIO Local 1245 v. Citizens
   Telecommunications Co.*,
   549 F.3d 781 (9th Cir. 2008) ............................................................................9

*International Brotherhood of Electrical Workers v. ICC,*
862 F.2d 330 (D.C. Cir. 1988) ................................................................7

*Jin v. Ministry of State Security,*
557 F. Supp. 2d 131 (D.D.C. 2008) ...................................................17

*Lee v. American Express Travel Related Services, Inc.,*
348 F. App'x 205 (9th Cir. 2009) .......................................................8

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ...........................................................................11

*Massachusetts v. Microsoft Corp.,*
373 F.3d 1199 (D.C. Cir. 2004) ..........................................................1

*McConnell v. FEC,*
540 U.S. 93 (2003) ...............................................................................4

*Medimmune, Inc. v. Genentech, Inc.,*
549 U.S. 118 (2007) ............................................................................8

*Mendoza v. Perez,*
754 F.3d 1002 (D.C. Cir. 2014) ..........................................................7

*Military Toxics Project v. EPA,*
146 F.3d 948 (D.C. Cir. 1998) ............................................................6

*Sea-Land Service, Inc. v. Department of Transportation,*
137 F.3d 640 (D.C. Cir. 1998) ............................................................7

*Sierra Club v. EPA,*
755 F.3d 968 (D.C. Cir. 2014) .......................................................6, 11

*Tachiona ex rel. Tachiona v. Mugabe,*
186 F. Supp. 2d 383 (S.D.N.Y. 2002) ................................................3

*Town of Chester v. Laroe Estates, Inc.,*
137 S. Ct. 1645 (2017) ........................................................................4

*Tripp v. Executive Office of the President,*
194 F.R.D. 344 (D.D.C. 2000) ..........................................................16

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior
University,*
489 U.S. 468 (1989) ............................................................................9

*Wagner v. FEC*,
No. 11-1841 JEB, 2012 WL 681463 (D.D.C. Mar. 1, 2012)................................................4

*Ying Qing Lu v. Lezell*,
No. 11-1815 JEB, 2012 WL 1929904 (D.D.C. May 29, 2012) ........................................3

## STATUTES, RULES, AND REGULATIONS

9 U.S.C. § 4..............................................................................................................................9

Cal. Bus. & Prof. Code § 17204 ...........................................................................................10

Department of Education, Borrower Defense Procedures,
82 Fed. Reg. 6253 (Jan. 19, 2017) ...................................................................................2

Department of Education, Borrower Defense Rule,
81 Fed. Reg. 75,926 (Nov. 1, 2016)............................................................................2, 10

Department of Education, Final Rule, Notification of Partial Delay of Effective Dates,
82 Fed. Reg. 27,621 (June 16, 2017) ..........................................................................3, 13

Department of Education, Negotiated Rulemaking Committee; Public Actions,
82 Fed. Reg. 27,640 (June 16, 2017) ...............................................................................3

Fed. R. Civ. P. 24(a) ...............................................................................................................1

Fed. R. Civ. P. 24(a)(1)..........................................................................................................4

Fed. R. Civ. P. 24(a)(2)........................................................................................................12

Fed. R. Civ. P. 24(b) ..............................................................................................................1

Fed. R. Civ. P. 24(b)(1)(B) ..................................................................................................14

Fed. R. Civ. P. 24(b)(3).....................................................................................................14, 15

Fed. R. Civ. P. 24(c) ..............................................................................................1, 3, 4, 13

## OTHER AUTHORITIES

Br. for Appellees U.S. Department of Labor, *et al.*,
*Chamber of Commerce v. DOL*, No. 17-10238 (5th Cir. filed July 3, 2017) ...................14

Br. for the United States as Amicus Curiae Supporting Petitioners,
*NLRB v. Murphy Oil USA, Inc.*, No. 16-307 (S. Ct. filed June 16, 2017) ........................14

Remarks from Secretary DeVos to the American Legislative Exchange Council, July 20, 2017, https://www.ed.gov/news/speeches/remarks-secretary-devos-american-legislative-exchange-council......................................................................................13, 14

Unopposed Motion by Appellants Thomas Price, Secretary of the U.S. Department of Health and Human Services, *et al.*, to Dismiss Appeal, *American Health Care Ass'n v. Price*, No. 17-60005 (5th Cir. filed June 2, 2017)..........14

Federal borrowers Meaghan Bauer and Stephano Del Rose (hereinafter, the Borrowers) have moved to intervene in this action as defendants under Federal Rule of Civil Procedure 24(a) or, in the alternative, 24(b). Defendants Secretary DeVos and the U.S. Department of Education (collectively, the Department) do not oppose intervention, but plaintiff California Association of Private Postsecondary Schools (CAPPS) contends that the Borrowers do not meet the standards for intervention. CAPPS's contention should be rejected.

## I.      The Borrowers' Submissions Satisfy Rule 24(c).

As the Borrowers have explained, this Circuit has taken a practical approach to interpreting Rule 24(c)'s requirement that a would-be intervenor file a responsive pleading upon moving to intervene. *See Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1236 n.19 (D.C. Cir. 2004). Because the Borrowers sought to intervene as soon as possible to protect their interests in the litigation, they filed detailed declarations supporting their motion and intend to respond to CAPPS's complaint when the government does on the court-ordered deadline of August 1, 2017. *See* June 21, 2017, Min. Order. Nothing more is required of the Borrowers. The proper management of this case does not require intervenors to answer before the Department.

CAPPS contends, however, that the absence of an answer has prejudiced its interests in the litigation and requires denial of intervention under Rule 24(c). Specifically, CAPPS argues that, without an answer, "it is unclear what [the proposed intervenors] would add to the Department's defense of this case or how their interests differ from the Department's." Opp. 4; *see also id.* (arguing that an answer is necessary "to assess the claims and interests that will be asserted by would-be intervenors and to determine whether those interests are adequately represented by existing parties").

1

The Borrowers have been clear about their interests and intent, and CAPPS has not suffered any prejudice. As detailed in their declarations, Ms. Bauer and Mr. Del Rose are federal Direct Loan borrowers with claims against a proprietary school that will be directly affected by the provisions concerning arbitration and class action waivers in the "Borrower Defense Rule," 81 Fed. Reg. 75,926 (Nov. 1, 2016), a rule that was further clarified by the "Borrower Defense Procedures," 82 Fed. Reg. 6253 (Jan. 19, 2017) (hereinafter, the Regulations). CAPPS has challenged the arbitration and class-action waiver provisions, alongside other limited portions of the Regulations, and argued that its challenge warrants invalidation and vacatur of the Regulations in full. *See* Compl. ¶ 242, ECF No. 1. The Borrowers therefore have an interest in defending the lawfulness of the Regulations as a whole, lest any portion be invalidated and cast doubt on the viability of the arbitration and class-action waiver provisions directly affecting the Borrowers. Accordingly, the Borrowers have indicated their intent to defend the Regulations as a whole. *See* Borrowers' Mot. to Intervene Memo. 10, ECF No. 22.

CAPPS's suggestion that an answer is necessary in particular to evaluate the Borrowers' Article III standing is disingenuous. The Borrowers' responses to CAPPS's complaint will reveal little about the injury to Ms. Bauer and Mr. Del Rose if the Regulations were invalidated. At a minimum, an answer will be far less helpful to CAPPS and this Court than the sworn declarations that Ms. Bauer and Mr. Del Rose submitted alongside their motion to intervene—as well as the complaint in their own action challenging the Department of Education's delay of the Borrower Defense Rule, which has been assigned to this Court as a related case. *See generally* Compl., *Bauer v. DeVos*, No. 17-1330 (D.D.C. filed July 6, 2017).

Nor must CAPPS or this Court wait for an answer from the Borrowers (or the Department, for that matter) to determine that the Department will not adequately represent the Borrowers'

interests. The Department has already taken the position that CAPPS has "raised serious questions concerning the validity of certain provisions of the final regulations" and has "identified substantial injuries that could result if the final regulations go into effect." Department of Education, Final Rule, Notification of Partial Delay of Effective Dates, 82 Fed. Reg. 27,621, 27621 (June 16, 2017). It has also taken action to delay the Regulations and reopen them through a new negotiated rulemaking. Department of Education, Negotiated Rulemaking Committee; Public Actions, 82 Fed. Reg. 27,640 (June 16, 2017). None of these actions suggests that the Department will offer the full defense of the Regulations that the Borrowers will. That the Borrowers have sued the Department over its delay of the Regulations in part on the ground that the Department has acted arbitrarily and capriciously, and contrary to law, in giving credence to CAPPS's claims underscores the divergence of interests between the Borrowers and the Department.

CAPPS contends that "other courts in this district have recently denied motions for intervention where the dictates of Rule 24(c) were not met." Opp. 4. But neither of the cases that CAPPS cites supports denying intervention here. In *Ying Qing Lu v. Lezell*, No. 11-1815 JEB, 2012 WL 1929904 (D.D.C. May 29, 2012), this Court acknowledged that it "may 'permit a degree of flexibility with technical requirements'" of Rule 24 "when the 'position of the movant is apparent from other filings.'" *Id.* at *1 (alteration omitted) (citing *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 393 n.8 (S.D.N.Y. 2002)). It declined to permit such flexibility only because the movant's interests were not apparent. *Id.* The motion to intervene asserted in "conclusory" fashion that the proposed intervenors had a "cash interest" in the case and did not claim that a denial of intervention would impede the proposed intervenors' ability to protect that interest. *Id.* at *2. The submissions in *Ying Qing* are a far cry from the Borrowers' justification for intervention described in sworn statements and a detailed motion to intervene.

The other case cited by CAPPS, *Wagner v. FEC*, No. 11-1841 JEB, 2012 WL 681463 (D.D.C. Mar. 1, 2012), is even farther from the mark. The Court there "note[d]" that a proposed intervenor's failure to file a responsive pleading with a motion could support denial of the motion under Rule 24(c). *Id.* at *2. The Court's denial of intervention, however, rested on the proposed intervenor's failure to satisfy the requirements for intervention of right under Rule 24(a). *Id.*

## II.   The Borrowers Have Article III Standing.

CAPPS contends that Article III standing is required for both intervention of right and permissive intervention. However, the case it cites—*Deutsche Bank National Trust Co. v. FDIC*, 717 F.3d 189 (D.C. Cir. 2013)—does not so hold. The majority opinion of *Deutsche Bank* addressed only intervention of right, *see id.* at 192, which the Supreme Court has now clarified requires Article III standing to the extent that an intervenor seeks relief beyond that sought by another party to the case, *see Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1648 (2017).

The separate question whether standing is required for permissive intervention remains open in this Circuit. *See In re Endangered Species Act Section 4 Deadline Litig.-MDL No. 2165*, 704 F.3d 972, 980 (D.C. Cir. 2013). At most, standing should be required of the Borrowers for permissive intervention only to the extent and at the time that the Department ultimately declines to defend the rule in full, in which case the Borrowers' continued defense of the Regulations might effectively seek "relief" (*i.e.*, judgment against CAPPS) beyond that sought by the Department. *Cf. McConnell v. FEC*, 540 U.S. 93, 233 (2003), *overruled on other grounds by Citizens United v. FEC*, 558 U.S. 310 (2010) (rejecting a standing-based challenge to a district court's grant of intervention under Rule 24(a)(1) where the agency defendant had standing and the defendant-intervenors' position was identical to the agency's).

In any event, Ms. Bauer and Mr. Del Rose have shown that they will suffer an injury in fact if the Regulations are invalidated, that invalidation of the Regulations would cause them injury by removing the benefits that the Regulations confer on the Borrowers, and that a decision by this Court in the Borrowers' favor would redress their injury. *See* Mot. to Intervene Memo. 6-8; *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015). Accordingly, they have Article III standing to defend the Regulations, to the extent such standing is required. Although CAPPS contests the Borrowers' standing at each turn, its contentions should be rejected.

**A.     The Borrowers have demonstrated an injury-in-fact sufficient to defend the Regulations in full.**

**1.**     CAPPS has challenged four distinct portions of the Regulations: (1) the arbitration and class-action provisions, (2) the financial responsibility provisions, (3) the borrower defense provisions, and (4) the repayment rate provisions. Compl. ¶¶ 202-41, ECF No. 1. In CAPPS's view, because the Borrowers allege that they will be directly affected only by invalidation of the arbitration and class-action provisions of the rules, they lack standing to defend any other portion of the Regulations. Opp. 13.

CAPPS's contention conflicts with CAPPS's own theory of the case. Specifically, despite directly challenging only selected aspects of the Regulations, CAPPS asks this Court to determine that the "entirety" of the Borrower Defense Rule is unconstitutional and arbitrary and capricious, to "[v]acat[e] the final regulations" in full, and to enjoin the Department from "taking any action whatsoever pursuant to the final regulations." Compl. ¶ 242(i), (iii), (iv). In CAPPS's view, then, a determination that any portion of the Regulations is unlawful would render the Regulations unenforceable as a whole, presumably on the basis of some theory that the Regulations are not severable. CAPPS cannot have it both ways. If CAPPS asserts that the Regulations must stand or

fall together, then it cannot claim that the Borrowers lack an interest in defending all aspects of the Regulations against claims that, under CAPPS's theory, would cause injury-in-fact to the Borrowers by invalidating the arbitration and class-action provisions along with the rest of the rules. Put simply, the Borrowers have standing because they "would suffer concrete injury if the court grants the relief [CAPPS] seek[s]." *Military Toxics Proj. v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998); *see Sierra Club v. EPA*, 755 F.3d 968, 975-76 (D.C. Cir. 2014).[1]

**2.** CAPPS also argues that the Borrowers, to the extent they have alleged an injury-in-fact, have not demonstrated that the injury is sufficiently imminent to confer Article III standing. Opp. 14. CAPPS contends that to have standing to defend the Regulations the Borrowers must first file claims in court and demonstrate that those claims would be compelled to arbitration. CAPPS's argument rests on a misunderstanding of the Borrowers' asserted injury.

Ms. Bauer and Mr. Del Rose have indicated a firm intent to file a lawsuit against the New England Institute of Art (NEIA) and the Education Management Corporation (EDMC), NEIA's corporate parent, in 2017. Bauer Decl. ¶ 25, ECF No. 22-1; Del Rose Decl. ¶ 32, ECF No. 22-2. Both anticipate that, if the Regulations go into effect, NEIA and EDMC will not try to enforce the arbitration provisions in students' enrollment contracts. Bauer Decl. ¶ 27; Del Rose Decl. ¶ 34. In

---

[1] The Borrowers do not, of course, concede that CAPPS's severability theory is correct, but their standing to defend against CAPPS's claims cannot be denied on the assumption that the claims will not succeed. Moreover, if CAPPS ultimately concedes that each portion of the challenged Regulations is severable, the Borrowers should at that time have the opportunity to introduce evidence, if they have not already done so, demonstrating which specific portions of the Regulations they have standing to defend. As the Borrowers have alleged in their separate suit against the Department challenging the delay of the Borrower Defense Rule, Compl. ¶¶ 40-47, *Bauer v. DeVos*, No. 17-1330 (D.D.C. filed July 6, 2017), they also have borrower defense applications pending with the Department. The delay of the Borrower Defense Rule prevents the Borrowers from benefiting from various safeguards that apply to the Department's adjudication of those applications under the Rule. The Borrowers intend to attest to these harms in supplemental declarations submitted in support of their motion for summary judgment in this case (and their own case) as well.

contrast, if the Regulations are invalidated, Ms. Bauer and Mr. Del Rose will have to "fight with NEIA and the other defendants in [their] lawsuit about whether [their] claims must be brought in arbitration." Bauer Decl. ¶ 28; Del Rose Decl. ¶ 35. The Borrowers have good reason to anticipate this fight: NEIA and EDMC responded to a demand letter from the Borrowers by stating their refusal to waive arbitration provisions that NEIA has used in enrollment agreements with students. Bauer Decl. ¶ 24; Del Rose Decl. ¶ 31.

The delay and expense of litigating a motion to compel arbitration, even if Ms. Bauer and Mr. Del Rose are ultimately successful, give rise to Article III standing. In *International Brotherhood of Electrical Workers v. ICC*, 862 F.2d 330 (D.C. Cir. 1988), for example, the D.C. Circuit held under similar circumstances that a party had standing to challenge an agency's jurisdiction to review arbitration awards because the party would "incur the costs of resisting challenges to [these] awards and the delays that such reviews entail." *Id.* at 334; *see also*, *e.g.*, *Sea-Land Serv., Inc. v. Dep't of Transp.*, 137 F.3d 640, 648 (D.C. Cir. 1998) ("The concrete cost of an additional [legal] proceeding is a cognizable Article III injury.").[2] Likewise, here, Ms. Bauer and Mr. Del Rose need not show that NEIA and EDMC will be successful in compelling arbitration to satisfy Article III's requirement for an injury-in-fact. Nor must they engage in the futile step of filing their claims in court to confirm that NEIA and EDMC will do precisely what they have already indicated they will do: attempt to enforce forced arbitration provisions in student enrollment agreements. *See Mendoza v. Perez*, 754 F.3d 1002, 1014 (D.C. Cir. 2014) (holding that workers who challenged the lawfulness of wages authorized by a federal rule had Article III

---

[2] CAPPS suggests that Ms. Bauer and Mr. Del Rose's claims might be stayed by a court pending the outcome of this case. Opp. 14. However, even if a court would take such action—a speculative possibility—CAPPS does not explain how a temporary stay would protect the Borrowers from the injury-in-fact threatened by CAPPS's suit: the *permanent* invalidation of the Regulations upon judgment in this case.

standing to challenge the rule despite not having taken the "futile" step of first applying for jobs that offered those wages); *cf. Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-32 (2007) (holding that a litigant need not expose itself to threatened legal action by a private party to have standing).

*Lee v. American Express Travel Related Services., Inc.*, 348 F. App'x 205 (9th Cir. 2009), on which CAPPS relies, is inapposite because the *Lee* plaintiffs asserted an injury-in-fact different from the injury asserted by the Borrowers here. In *Lee*, the Ninth Circuit issued a non-precedential ruling that plaintiffs lacked standing to bring state-law causes of action against credit card companies "for the inclusion of allegedly unconscionable arbitration and other provisions in their credit card agreements." *Id.* at 206. It did so because the plaintiffs asserted an Article III injury from "being denied the ability to arbitrate" their claims under conscionable terms in a predispute arbitration agreement, despite having not attempted to arbitrate and, indeed, not having any dispute with the defendant other than over the validity of the arbitration provisions. *Id.* at 207 & n.3. Here, by contrast, the Borrowers intend to bring a class action in court over a substantive dispute with their school, and they will necessarily suffer an Article III injury by first having to litigate the issue of whether the claims must instead be arbitrated individually with NEIA and EDMC.

**3.**     CAPPS further contends that "even if enforcement of the arbitration provision were guaranteed, pursuing claims in an arbitral forum"—even where required to be done individually, instead of as part of a class action—"is not an injury." Opp. 14. As discussed above, Ms. Bauer and Mr. Del Rose will be injured by invalidation of the Regulations regardless whether they are ultimately compelled to arbitrate. But even on its own terms, CAPPS's theory would lead to absurd results and finds no support in the case law.

If CAPPS were correct, a party to an agreement that contains an arbitration provision would never have standing to enforce that provision in court through a motion to compel arbitration. After all, that party could not demonstrate at the outset that an arbitral forum would necessarily affect the outcome of his claims. Nor would a party have standing to *resist* enforcement of an arbitration agreement. Yet the Federal Arbitration Act (FAA) expressly authorizes motions to compel arbitration that are filed by a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration." 9 U.S.C. § 4. Courts, in turn, regularly adjudicate contested proceedings over whether a party has a right under the FAA to an order compelling arbitration, and in the process consider arguments by parties resisting arbitration. *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989); *see also Int'l Bhd. of Elec. Workers, AFL-CIO Local 1245 v. Citizens Telecomm'ns Co.*, 549 F.3d 781, 789 (9th Cir. 2008) (holding that a party had standing to compel arbitration upon an adverse party's refusal where it would be "forced to incur the expense of either suing in federal court to compel arbitration *or litigating the alleged [claim at issue] in federal court*" (emphasis added)); *Aneke v. Am. Exp. Travel Related Servs., Inc.*, 841 F. Supp. 2d 368, 374 (D.D.C. 2012) (holding that "the inability to bring a class action claim" due to an arbitration provision constituted an injury-in-fact sufficient to satisfy Article III standing requirements).

To the extent CAPPS's contention rests on its belief (at 15) that forced arbitration is better for consumers than providing them the option of litigating in court at the time a dispute arises, the Department's own factual findings in the higher education context contradict that view. Specifically, based on the administrative record, the Department concluded in promulgating the Borrower Defense Rule that:

> [E]vidence showed that the widespread and aggressive use of class action waivers and predispute arbitration agreements coincided with widespread abuse by schools

over recent years, and effects of that abuse on the Direct Loan Program. It is undisputable that the abuse occurred, that a great many students were injured by the abuse, that the abusive parties aggressively used waivers and arbitration agreements to thwart timely efforts by students to obtain relief from the abuse, and that the ability of the school[s] to continue that abuse unhindered by lawsuits from consumers has already cost the taxpayers many millions of dollars in losses and can be expected to continue to do so.

81 Fed. Reg. at 76,025.

The two cases on which CAPPS relies to contend that being compelled to arbitrate claims does not give rise to an injury-in-fact are not to the contrary. In *Bord v. Banco de Chile*, 205 F. Supp. 2d 521 (E.D. Va. 2002), a Virginia district court held that a plaintiff had not "suffered any particularized injury by submitting to [an] arbitration process," but did so only because the arbitration was non-binding. *Id.* at 524. The plaintiff was therefore free to bring suit against its adversary in court if it was dissatisfied with the arbitral outcome. *Id.* The court's rationale would not hold water in the D.C. Circuit, which—as discussed above—recognizes that the cost of additional legal proceedings gives rise to a sufficient injury under Article III. At a minimum, however, the circumstances in *Bord* have no application here.

In *Fineman v. Sony Network Entertainment International LLC*, No. C 11-05680 SI, 2012 WL 424563 (N.D. Cal. Feb. 9, 2012), another district court considered whether a plaintiff had "standing" under California's Unfair Competition Law (UCL) based on a company's imposition of a class-action waiver provision in an agreement with the plaintiff. The court held that the plaintiff had "failed to allege a sufficient economic injury sufficient to confer standing under the UCL," which requires a plaintiff to "show that he or she has 'lost money or property,'" because his theory of standing hinged on the speculative possibility that defendants would engage in some "unknown wrongdoing" in the future that could lead to claims being forced into individual arbitration. *Id.* at *2-*3 (quoting Cal. Bus. & Prof. Code § 17204). In sharp contrast, the Borrowers

10

assert they have already been wronged by NEIA and its parent company and have demonstrated that the companies intend to enforce arbitration agreements in student enrollment contracts, despite the Borrowers' interest in representing a class of other students in court.

**B.     The Borrowers have established causation and redressability.**

CAPPS devotes four sentences to asserting that the Borrowers have not demonstrated that they meet the causation and redressability prongs necessary for Article III standing. Opp. 15. Its perfunctory argument is meritless.

First, it is immaterial to the causation analysis that the Borrowers' injury relies in part on the anticipated action of third parties to compel arbitration of the Borrowers' claims, and it is incorrect that the injury hinges on "the decision of courts to enforce those provisions." *Id.* The Borrowers have demonstrated that NEIA and EDMC have a firm intent to enforce the forced arbitration provisions in student enrollment agreements once the Borrowers bring suit. Bauer Decl. ¶ 24; Del Rose Decl. ¶ 31. As CAPPS has recognized, however, once the Regulations go into effect, schools that intend to continue to participate in the Direct Loan Program "will need to . . . actually litigate cases, including class actions, in federal and state court." Pl.'s Preliminary Injunction Memo. 21, ECF No. 6. The Borrowers' injury is thus "fairly traceable" to the threat of invalidation of the Regulations, and NEIA's anticipated actions are not "independent" of those Regulations. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and alterations omitted). No speculation is required to demonstrate that schools will rely on arbitration clauses and class-action bans if, as a result of this lawsuit, they are permitted to do so. *See Sierra Club*, 755 F.3d at 975 (holding that the likelihood that industry would rely on a regulatory exclusion that it specifically sought was not too speculative to establish causation); *cf. Animal*

*Legal Def. Fund v. Glickman*, 154 F.3d 426, 440 (D.C. Cir. 1998) (en banc) (holding that the causation requirement is satisfied when agency action authorizes or permits injurious conduct).

CAPPS further argues that the causation requirement is not satisfied, and that a decision in the Borrowers' favor would not necessarily redress their asserted injury, because there is "no guarantee that their sought-after class would ever be certified, or that litigation would result in a better outcome than arbitration." Opp. 15. As described above, however, the Borrowers' claim of injury does not depend on whether a court would actually enforce the arbitration provisions in their agreements; regardless of what a court does, the cost and delay attendant to litigating a motion to compel arbitration is sufficient to confer standing. At bottom, CAPPS fundamentally misunderstands the nature of the injury asserted by the Borrowers, a misunderstanding that undermines its entire standing argument.

## III.    The Borrowers Qualify for Intervention of Right.

Federal Rule of Civil Procedure 24(a)(2) allows for intervention as a matter of right if the prospective intervenor demonstrates the "1) timeliness of the application to intervene; 2) a legally protected interest; 3) that the action, as a practical matter, impairs or impedes that interest; and 4) that no party to the action can adequately represent the potential intervenor's interest." *Crossroads Grassroots Policy Strategies*, 788 F.3d at 320.

CAPPS puts up no serious defense under Rule 24(a)(2) to the Borrowers' intervention of right. It does not contest that the Borrowers' intervention is timely, and its contention that the Borrowers lack a legally protected interest that may be impaired absent intervention is a reprise of its standing argument. *See* Opp. 17-19. Moreover, CAPPS spends only a sentence arguing that the Borrowers do not meet the fourth requirement for intervention of right—inadequate representation of their interests by an existing party. Opp. 20. That conclusory contention is wrong.

Specifically, CAPPS argues that the Borrowers did not "file the pleading required by Rule 24(c)," and "thus failed to establish any distinction between their interests and those of the Department." *Id.* As described above, however, CAPPS's technical reading of Rule 24(c) is not appropriate, and its validity is, in any event, a separate inquiry from the question whether the Department of Education will adequately represent the Borrowers' interests.

As Ms. Bauer and Mr. Del Rose have described, the Department has delayed large portions of the Borrower Defense Rule, asserted that CAPPS has "raised serious questions concerning the validity of certain provisions of the final regulations," and initiated a new negotiated rulemaking to reconsider the Rule, all contrary to the interests of the Borrowers. *See* Mot. to Intervene Memo. 9 (quoting Department of Education, Notification of Partial Delay of Effective Dates, 82 Fed. Reg. at 27,621). Indeed, the Borrowers have now sued the Department over its delay of the Rule, a sure sign that the parties' interests are not aligned. *See Bauer v. DeVos*, No. 17-1330 (D.D.C. filed July 6, 2017). And even the Department itself has not argued that it adequately represents the Borrowers' interests in this case. Under these circumstances, the Borrowers have unquestionably met the "minimal" burden imposed on them by Rule 24(a)(2)'s requirement that an intervenor not be adequately represented by an existing party. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003).

Developments since Ms. Bauer and Mr. Del Rose filed their motion to intervene further show the Department will not adequately represent their interests in this case. Secretary DeVos recently stated that the Department is "undertaking a 'regulatory reset' to review the previous administration's most harmful and costly regulations" and that there are "plenty that fit that description." Remarks from Secretary DeVos to the American Legislative Exchange Council, July 20, 2017, https://www.ed.gov/news/speeches/remarks-secretary-devos-american-legislative-

exchange-council. Her first example was the Borrower Defense Rule, which she described as a "poorly written regulation[]" that "would cause more harm than good" and that had been adopted "[w]ithout Congressional action or authorization." *Id.* That is not the message of an agency prepared to adequately defend the interests of borrowers who benefit from the existing Borrower Defense Rule.

Moreover, the Trump Administration's recent decisions to drop defenses of agency actions that limit the use of forced arbitration agreements and class-action waivers in other cases confirm the unlikelihood that it will defend portions of the Regulations addressing those types of contractual provisions here. *See* Br. for the United States as Amicus Curiae Supporting Petitioners, *NLRB v. Murphy Oil USA, Inc.*, No. 16-307 (S. Ct. filed June 16, 2017); Br. for Appellees U.S. Department of Labor, *et al.*, *Chamber of Commerce v. DOL*, No. 17-10238 (5th Cir. filed July 3, 2017); Unopposed Mot. by Appellants Thomas Price, Secretary of the U.S. Department of Health and Human Services, *et al.*, to Dismiss Appeal, *Am. Health Care Ass'n v. Price*, No. 17-60005 (5th Cir. filed June 2, 2017).

## IV. In the Alternative, the Borrowers Should Be Granted Permissive Intervention.

On timely motion, courts may grant permissive intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In assessing the propriety of permissive intervention, courts consider whether intervention would "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). CAPPS wrongly contends that the Borrowers' alternative request for permissive intervention should be denied.

First, contrary to CAPPS's assertion, the Borrowers' participation would not unduly delay the litigation or prejudice CAPPS's interests. The Borrowers agree with CAPPS (at 22) that a very

large number of student borrowers have claims against predatory institutions that they attended and an interest in the full, immediate implementation of the Borrower Defense Rule. But only two such borrowers have sought to intervene here, they share the same counsel, and they intend to submit joint filings throughout the course of the litigation. Given that the proposed State Intervenors have also thus far submitted joint filings in the case, CAPPS's sky-is-falling prediction (at 22) that it might have to respond to "585 pages or more of memoranda" in each round of briefing is far-fetched and no basis for denying intervention.

The right of intervenors to participate in possible settlement discussions also does not warrant denial of intervention. It will always be the case that a greater number of parties to litigation will raise some possibility of prolonging a case. But the key question is not whether intervention will delay litigation in any way, but whether it will "unduly" do so. Fed. R. Civ. P. 24(b)(3). Given that the Borrowers have moved to intervene at an early date, long before—at least to their knowledge—the Department and CAPPS have entered into any settlement discussions, their right to participate in any later discussions should have no weight here. *See*, *e.g.*, *100Reporters LLC v. DOJ*, 307 F.R.D. 269, 286 (D.D.C. 2014) (granting permissive intervention to intervenors who sought to participate in litigation at "a nascent stage," despite the opposing party's contention that participation would later "hinder any prospect of settlement"); *cf. In re Endangered Species Act Section 4 Deadline Litig.*, 277 F.R.D. 1, 8 (D.D.C. 2011), *aff'd on other grounds*, 704 F.3d 972 (D.C. Cir. 2013) (denying permissive intervention where, among a number of factors supporting denial, the original parties to the litigation had a settlement agreement pending before the Court at the time it considered the motion to intervene). CAPPS's argument in this regard is even weaker now that the Borrowers have filed their own suit against the Department seeking immediate implementation of the Borrower Defense Rule. Regardless whether the

Borrowers' intervention is permitted, the Department will not be able to simply resolve this suit through settlement with CAPPS without any input from the Borrowers.

CAPPS misses the mark (at 22) in invoking *Tripp v. Executive Office of the President*, 194 F.R.D. 344 (D.D.C. 2000), to support its position. In *Tripp*, this Court denied permissive intervention to more than *700* putative class members, *id.* at 347, circumstances that are not remotely close to those here. And the Court's reference to "collateral issues and undue complications" warranting denial of permissive intervention referred primarily to problems caused, not by the number of proposed intervenors, but by the fact the Court would have to "carefully scrutinize every discovery request posed by the intervenors to ensure that they were not using their intervenor status . . . to obtain what they would not be entitled to get" in an ongoing case of their own in which discovery had already closed. *Id.* Given that the schedule for the Borrowers' own case against the Department will undoubtedly be coordinated with the schedule in this one, there is no possibility that the Borrowers will use their participation in this case to evade the schedule in their own.

CAPPS also contends that the Borrowers must show that their participation would contribute significantly to the "just and equitable adjudication of the legal question presented," and have not done so. Opp. 23 (internal quotation marks omitted). As an initial matter, CAPPS is wrong that this consideration is mandatory for permissive intervention. This factor has no home in Rule 24's text, and the Borrowers are unaware of any D.C. Circuit case supporting CAPPS's position. Even the district court case on which CAPPS relies—*Center for Biological Diversity v. EPA*, 274 F.R.D. 305 (D.D.C. 2011)—says only that a court "may" consider this factor. *Id.* at 313.

In any event, CAPPS's argument in this regard boils down to contending that the Court can "effectively consider[]" the Borrowers' "views . . . through the submission of [an] *amicus* brief[],"

making intervention unnecessary. Opp. 24. However, an amicus curiae "participates only for the benefit of the Court." *Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 136 (D.D.C. 2008). In contrast, the Borrowers seek to protect their own interests as parties with a clear stake in the litigation outcome. As CAPPS's own brief recognizes, for example, the Borrowers, if permitted to intervene, would be entitled to participate in any settlement discussions, a right attendant to party status that they would not have as amici curiae. As intervenors, the Borrowers would also be able to appeal an adverse decision or to defend against an appeal by CAPPS in which the Department might otherwise acquiesce. Relegation of the Borrowers to amici curiae status could in no way provide a substitute for the key rights available to intervenors.

## CONCLUSION

For the foregoing reasons, this Court should grant Ms. Bauer and Mr. Del Rose's motion to intervene as defendants.

Respectfully submitted,

/s/ *Julie A. Murray*

| | |
|---|---|
| Toby R. Merrill | Julie A. Murray |
| Mass. BBO No. 601071 | D.C. Bar No. 1003807 |
| Amanda M. Savage | Scott L. Nelson |
| Mass. BBO No. 690938 | D.C. Bar No. 413548 |
| Alec P. Harris | Adam R. Pulver |
| Colo. Bar No. 47547 | D.C. Bar No. 1020475 (D.D.C. |
| PROJECT ON PREDATORY STUDENT LENDING, | admission pending) |
| LEGAL SERVICES CENTER OF HARVARD LAW | PUBLIC CITIZEN LITIGATION GROUP |
| SCHOOL | 1600 20th Street NW |
| 122 Boylston Street | Washington, DC 20009 |
| Jamaica Plain, MA 02130 | (202) 588-1000 |
| (617) 522-3003 | jmurray@citizen.org |
| tomerrill@law.harvard.edu | |

Dated: July 26, 2017