UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CALIFORNIA ASSOCIATION OF
PRIVATE POSTSECONDARY SCHOOLS,

*Plaintiff,*

v.

ELISABETH DeVOS, Secretary, U.S.
Department of Education, *et al.*,

*Defendants.*

Civil Action No. 17-999 (RDM)

## DECLARATION OF STEVE GUNDERSON

I, Steve Gunderson, submit this declaration in support of the California Association of Private Postsecondary Schools ("CAPPS")'s Motion for a Preliminary Injunction. I have personal knowledge of the facts stated herein.

1. I am the President and CEO of the Career Education Colleges and Universities ("CECU"). I have held this position since 2012. My responsibilities include representing the CECU membership and private postsecondary institutions before State and Federal agencies and other regulatory bodies. Before joining CECU, I served as the President and CEO of the Council on Foundations. Prior to that, I served 16 years in the U.S. Congress representing the 3rd District of Wisconsin.

2. CECU is a voluntary membership organization of accredited, postsecondary schools, institutes, colleges, and universities that provide career-specific educational programs.

3. CECU has approximately 500 member campuses that educate and support millions

of students for employment in over 200 occupational fields.

4. CECU member institutions provide a full range of higher education programs, including master's and doctoral degrees, two- and four-year associate and baccalaureate degrees, and short-term certificate and diploma programs.

5. Most CECU member institutions participate in the Federal Student Financial Assistance ("SFA") programs authorized under title IV of the Higher Education Act of 1965, as amended. In order to participate in the SFA programs, they must be licensed by the State in which they are located, accredited by a nationally recognized accrediting body, and approved by the U.S. Department of Education ("Department").

6. Career education colleges and universities often provide skills-based education opportunities to nontraditional students, particularly veterans, working mothers, and first generation students, to help them open doors and secure employment in today's workforce.

7. Career education colleges and universities equip millions of students from diverse social and economic backgrounds with access to career-focused learning and the job skills they need for a successful future. Many CAPPS schools are technical or vocational colleges that prepare workers for occupations necessary to a thriving economy.

8. Under the Department's Final Rule published in the Federal Register November 1, 2016 ("2016 Final Rule"), the Financial Responsibility Provisions at 34 CFR 668.171 were amended to include mandatory and discretionary "triggers" to assess financial responsibility.

9. The mandatory triggers include a series of self-executing triggers that, if triggered, would require a school to post an automatic letter of credit ("LOC"). The triggers include: 1) the institution has a cohort default rate of 30% or greater for each of the two most recent official calculations; 2) the institution is a for-profit institution and fails in the previous fiscal year the 90/10 non-title IV revenue requirement; or 3) the institution is publicly-traded and receives certain warnings from the Securities and Exchange Commission ("SEC") or the exchange on which the stock is traded or fails to file timely certain required reports to the SEC.

10. The mandatory triggers include events that would cause the Department to recalculate the composite score, and if applicable, require a LOC equal to 10% of the prior year title IV funds. The composite score is one of the standards which the Department utilizes to gauge the financial responsibility of an institution. It is a composite of three ratios derived from an institution's audited financial statements. A sub-optimal composite score typically requires that the school be subject to cash monitoring requirements and post a LOC. The enumerated triggers would negatively impact the composite score of any institution subject to one of the trigger events. The triggers that lead to a recalculation of the composite score include: 1) the institution is required to pay a debt or incur liability arising from a final judgment in a judicial or administrative proceeding or settlement, or is a defendant in an action brought by Federal or State authorities, in connection with borrower defense-related claims; 2) the institution is a defendant in a lawsuit or other action that has survived a motion for summary judgment; 3) the institution is required by its accrediting agency to submit a teach-out plan for certain reasons related to closure of the institution or any of its branch campuses or additional locations; 4) the institution has gainful employment programs that could become ineligible for title IV based on their final debt-to-earnings rates for the next award year; or 5) the institution is a proprietary institution, has a composite score of less than 1.5, and has a withdrawal of owner's equity by any means, including by declaring a dividend.
11. CECU members, including many CAPPS members, would be immediately subject to mandatory triggers.
12. Many schools are currently defending lawsuits, no matter how frivolous.
13. An equal number of schools have been required to submit teach-out plans by their accreditor for reasons related to closure of the institution or any of its branch campuses or additional locations as they properly respond to changing enrollment and economics.
14. A significant number of CECU member schools and CAPPS member schools have gainful employment programs that could become ineligible for title IV based on their final debt-to-earnings rates for the next award year. The triggers proposed by the Department would cause CAPPS members to post letters of credit.

15. Obtaining letters of credit or other financial protection involves substantial fees and expense, and may be difficult to secure for any institution in the current credit environment. Often, institutions will have to provide a cash deposit sufficient to cover the entire LOC.
16. The potential impact of these changes—based on the wide range of triggers—cannot be overstated.
17. The LOC triggers in the 2016 Final Rule will cause damage in addition to the severe financial burden of the LOCs. If a nonprofit or proprietary institution meets a single one of the triggers, it will also be determined to not be financially responsible, placed on provisional certification, be required to process its federal student aid funds under a form of Heightened Cash Monitoring ("HCM"), and be required to meet additional reporting requirements under the "zone" financial responsibility alternative.
18. Institutions will face these demands at a time when the credit markets are exceptionally tight and institutions either have no access to unsecured credit or the cost of obtaining credit is prohibitive. Because of the perceived "government war on proprietary schools" it is very, very difficult for such schools to access credit.
19. Very simply, this section of the 2016 Final Rule is likely to cripple many institutions and force others into financial exigency or closure.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 21st day of September, 2018, in Arlington, VA.

*Steve Gunderson*
Steve Gunderson