# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CALIFORNIA ASSOCIATION OF PRIVATE POSTSECONDARY SCHOOLS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| ELISABETH DEVOS, in her official capacity as Secretary of the U.S. Department of Education, *et al.*, | ) ) ) ) | Civil Action No. 17-999 (RDM) |
| Defendants, | ) ) | |
| MEAGHAN BAUER and STEPHANO DEL ROSE, | ) ) ) | |
| Defendant-Intervenors. | ) ) | |

## DEFENDANT-INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF INTERVENTION

Toby R. Merrill
D.D.C. Bar No. 0006
PROJECT ON PREDATORY STUDENT LENDING,
LEGAL SERVICES CENTER OF HARVARD LAW
SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
(617) 522-3003
tomerrill@law.harvard.edu

Julie A. Murray
D.C. Bar No. 1003807
Scott L. Nelson
D.C. Bar No. 413548
Adam R. Pulver
D.C. Bar No. 1020475
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
jmurray@citizen.org

*Counsel for Defendant-Intervenors*

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ............................................................................................................1

BACKGROUND ..............................................................................................................1

A.      Litigation in This Case and *Bauer v. DeVos*......................................................1

B.      NEIA and EDMC Bankruptcy ...........................................................................3

C.      *Bauer* Ruling and Subsequent Events................................................................5

ARGUMENT ...................................................................................................................7

I.      CAPPS Has Provided No Legal Basis for Reconsidering Intervention as of Right. ...........7

II.     If This Court Reconsiders Intervention, Permissive Intervention Remains
        Appropriate. ......................................................................................................12

CONCLUSION................................................................................................................12

# TABLE OF AUTHORITIES

**CASES**                                                                                            **Page(s)**

*Bauer v. DeVos,*
  __ F. Supp. 3d __, 2018 WL 4353656 (D.D.C. Sept. 12, 2018)......................................5, 8

*Cleveland County Ass'n for Government by People v. Cleveland County Board of
  Commissioners,*
  142 F.3d 468 (D.C. Cir. 1998) ...........................................................................................9

*\*Crossroads Grassroots Policy Strategies v. FEC,*
  788 F.3d 312 (D.C. Cir. 2015) ...........................................................................................7

*In re* Education Management II LLC,
  Docket No. 18-11494 (D. Del. Bankr.)...............................................................................3

*Mova Pharm. Corp. v. Shalala,*
  140 F.3d 1060 (D.C. Cir. 1998) .........................................................................................7

*Lyles v. District of Columbia,*
  65 F. Supp. 3d 181 (D.D.C. 2014) .....................................................................................7

*In re* The New England Institute of Art, LLC,
  Docket No. 18-11550 (D. Del. Bankr.)...............................................................................3

*\*Parker v. John Moriarty & Associates,*
  221 F. Supp. 3d 1 (D.D.C. 2016) ....................................................................................7, 9

**STATUTES, REGULATIONS, AND RULES**

Higher Education Act
  20 U.S.C. § 1002(a)(4)(A) .................................................................................................3
  20 U.S.C. § 1099c .............................................................................................................4

34 C.F.R. § 600.31 ...................................................................................................................4

Federal Rule of Civil Procedure 24 ........................................................................................6

Department of Education, Borrower Defense Final Rule,
  81 Fed. Reg. 75,926 (Nov. 1, 2016)..............................................................................1, 10

*\* Authorities on which we chiefly rely are marked with asterisks.*

**OTHER AUTHORITIES**

Amended & Restated Asset Purchase Agreement Between and Among, inter alia,
 Dream Center Foundation and EDMC, *available at* https://bit.ly/2RtBfMw ..................... 4

Daniel Moore, *EDMC Completes Sale of Schools to Dream Center*, Pittsburgh Post-Gazette
 (Oct. 18, 2017), https://bit.ly/2DySp3W ........................................................................... 4

Daniel Moore, *EDMC Sale Gets Initial Blessing from U.S. Department of Education*,
 Pittsburgh Post-Gazette (Sept. 20, 2017), https://bit.ly/2ytr1Cg ......................................... 4

Daniel Moore, *EDMC to Sell Schools to Los Angeles Nonprofit*, Pittsburgh Post-Gazette
 (Mar. 3, 2017), https://bit.ly/2zVlWpc ........................................................................... 3, 4

Department of Education, Press Release, *More than 50 Corinthian Campuses
 Transition to Nonprofit Status Under Zenith Education Group* (Feb. 3, 2015),
 https://bit.ly/2CrUh1w11 ................................................................................................... 4

Michael Stratford, *Inside the Deal to Convert a Large For-Profit College Into a Nonprofit*,
 Politico (Apr. 11, 2017), https://politi.co/2pzVPhI .............................................................. 4

Zachery Eanes, *For-Profit School Operator Closing 30 Campuses, Including 3 in NC*,
 Raleigh News & Observer, July 2, 2018 (updated July 10, 2018),
 https://bit.ly/2ymaUXY34 ................................................................................................ 4, 5

## INTRODUCTION

California Association of Private Postsecondary Schools (CAPPS) asks this Court to reconsider its grant of intervention as of right to defendant-intervenors Meaghan Bauer and Stephano Del Rose (Borrowers). This Court should not do so. The bankruptcy of New England Institute of Art (NEIA) and Education Management Corporation (EDMC) does not change the fact that the Borrowers had an independent, legally protectable interest in defending the entire rule at the time of intervention in light of their interests in the Borrower Defense Rule's borrower defense provisions challenged by CAPPS. *See* 81 Fed. Reg. 75,926 (Nov. 1, 2016). And as this Court has recognized, CAPPS had (until this motion) consistently taken the position that the provisions of the Borrower Defense Rule are non-severable. CAPPS's late-breaking change in position should be rejected as a basis for granting CAPPS's motion for reconsideration, as should its belated attempt to carve out the borrower defense provisions in which the Borrowers undisputedly have an interest from other provisions that CAPPS challenges. These arguments are not newly available reasons justifying reconsideration and are, in any event, unconvincing.

## BACKGROUND

### A.     Litigation in This Case and *Bauer v. DeVos*

In June 2017, defendant-intervenors Bauer and Del Rose, two former students of the for-profit college NEIA, moved to intervene in this action to help defend the Borrower Defense Rule from challenge by CAPPS. Bauer and Del Rose explained that, on behalf of themselves and other former NEIA students, they were preparing to file a lawsuit against NEIA and its corporate parent EDMC. *See* Bauer Decl. ¶ 25, ECF No. 22-1; Del Rose Decl. ¶ 32, ECF No. 22-2. They stated that NEIA and EDMC had refused their request that the school and its parent agree not to enforce a predispute arbitration provision in the students' enrollment contracts. Bauer Decl. ¶ 24; Del Rose

Decl. ¶ 31. They explained that they had a firm intent to file their lawsuit once the Borrower

Defense Rule took effect as anticipated on July 1, 2017, because at that time, the rule would

prohibit their school from enforcing predispute arbitration agreements and class waivers against

them and their classmates while the school received Title IV funding. Bauer Decl. ¶¶ 25-27; Del

Rose Decl. ¶¶ 32-34.

The following month, the Borrowers filed a related case against the Department of

Education (ED), challenging its decision to delay the Borrower Defense Rule. *See Bauer v. DeVos*,

No. 17-1330 (D.D.C. filed July 6, 2017). They identified an interest in implementation of the

arbitration and class-waiver provisions and in the borrower defense provisions, which would

provide them additional protections and rights related to borrower defense applications that they

had submitted to the Department and which remained pending.

CAPPS opposed the Borrowers' motion to intervene as defendants in this case, in part on

the ground that they lacked a legally protectable interest. It argued, among other things, that

Bauer's and Del Rose's interest in pursuing a class action in court against NEIA and EDMC could

not give them standing to defend any portion of the rule other than those provisions governing the

use of forced arbitration and class-waiver provisions. In reply, the Borrowers pointed to the relief

sought by CAPPS: an order declaring that the "entirety" of the Borrower Defense Rule was

unconstitutional and arbitrary and capricious, and enjoining the Department from "taking any

action whatsoever pursuant to the final regulations." Compl. ¶ 242(i), (iii); *see also id.* ¶ 242(iv)

(seeking "[v]acat[ur]" of "the final regulations"). As they explained, because CAPPS had directly

challenged only selected portions of the rule, yet sought vacatur of the entire regulation, it

necessarily had advanced a theory of non-severability with respect to the rule. Borrowers' Reply

6, ECF No. 44. They requested, however, that "if CAPPS ultimately concede[d] that each portion

of the challenged Regulations [was] severable, the Borrowers should at that time have the opportunity to introduce evidence, if they ha[d] not already done so, demonstrating which specific portions of the Regulations they ha[d] standing to defend." *Id.* at 6 n.1. The Borrowers also explained that their standing to bring the challenge in *Bauer v. DeVos*, No. 17-1330, rested in part on their borrower defense applications pending with ED, not just their interest in bringing suit against NEIA and EDMC. *Id.*

In March 2018, this Court formally stayed proceedings. Litigation in *Bauer* continued, however, and the Borrowers filed repeated declarations in that case attesting not only to their interest in bringing suit against NEIA and EDMC, but also with respect to their pending borrower defense applications and their desire to see the borrower defense provisions take effect. *See*, *e.g.*, Del Rose Decl., ECF No. 15-2; Bauer Decl., ECF No. 15-3.

## B.    NEIA and EDMC Bankruptcy

Briefing in *Bauer* was complete in May 2018. On June 29, 2018, NEIA and EDMC filed for bankruptcy. *See In re* Education Management II LLC, Docket No. 18-11494 (D. Del. Bankr.); *In re* The New England Institute of Art, LLC, Docket No. 18-11550 (D. Del. Bankr.). At that time, they became ineligible to participate in the Title IV program. *See* 20 U.S.C. § 1002(a)(4)(A) (defining eligible institution to exclude schools that file for bankruptcy). Because the Borrower Defense Rule's provisions on forced arbitration and class waivers apply only as a condition on Title IV funding, those provisions will no longer apply to NEIA and EDMC when it takes effect.

Before filing for bankruptcy, EDMC had agreed to sell some but not all of EDMC's schools and campuses to a higher education entity called the Dream Center Foundation and a variety of subsidiary non-profits. *See* Daniel Moore, *EDMC to Sell Schools to Los Angeles Nonprofit*, Pittsburgh Post-Gazette (Mar. 3, 2017), https://bit.ly/2zVlWpc; Daniel Moore, *EDMC Completes*

*Sale of Schools to Dream Center*, Pittsburgh Post-Gazette (Oct. 18, 2017), https://bit.ly/2DySp3W.

The sale shifted about 60,000 students and 15,000 employees from EDMC to Dream Center. *See*

Moore, *EDMC Completes Sale of School*s. EDMC continued to operate after the sale only to wind

down schools that were no longer accepting new students; NEIA was one such school.

Certain EDMC assets and liabilities purportedly transferred to Dream Center Foundation

as part of the sale, and others did not. *See* Michael Stratford, *Inside the Deal to Convert a Large

For-Profit College Into a Nonprofit*, Politico (Apr. 11, 2017), https://politi.co/2pzVPhI; Amended

& Restated Asset Purchase Agreement Between and Among, inter alia, Dream Center Foundation

and EDMC 12-15, *available at* https://bit.ly/2RtBfMw. Further, pursuant to its authority under the

Higher Education Act, ED was entitled to attach additional conditions on the sale as part of its

Title IV oversight. *See* 20 U.S.C. § 1099c; 34 C.F.R. § 600.31; *see also, e.g.*, ED, Press Release,

*More than 50 Corinthian Campuses Transition to Nonprofit Status Under Zenith Education Group*

(Feb. 3, 2015), https://bit.ly/2CrUh1w (conditioning approval of sale on agreement of purchasing

entity to an independent monitor and "conduct provisions," plus payments to underwrite student

loan forgiveness). Although ED granted pre-acquisition approval of the sale, *see* Daniel Moore,

*EDMC Sale Gets Initial Blessing from U.S. Department of Education*, Pittsburgh Post-Gazette

(Sept. 20, 2017), https://bit.ly/2ytr1Cg, it remains unclear whether ED has adopted or will adopt

such conditions. Dream Center continues to operate many of the sold schools, with much of the

same personnel. It participates in the Title IV federal aid program and will be subject to the

Borrower Defense Rule when it becomes effective. *See*, *e.g.*, Zachery Eanes, *For-Profit School

Operator Closing 30 Campuses, Including 3 in NC*, Raleigh News & Observer, July 2, 2018

(updated July 10, 2018), https://bit.ly/2ymaUXY (describing month-to-month Title IV eligibility

of schools involved in transfer).

C.      *Bauer* **Ruling and Subsequent Events**

In September 2018, this Court issued an opinion in *Bauer v. DeVos*, holding that ED's section 705 stay of the Borrower Defense Rule and its February 2018 delay rule were unlawful. *Bauer v. DeVos*, __ F. Supp. 3d __, 2018 WL 4353656 (Sept. 12, 2018). Before reaching the merits, the Court held that Bauer and Del Rose's interests in the arbitration, class-waiver, and borrower defense provisions supported their Article III standing to bring the case. *Id.* at *8-*9. It also noted that ED "ha[d] not contested that the student borrower plaintiffs would benefit from vacatur of the delay actions, nor ha[d] it called into question any of the facts that they ha[d] alleged." *Id.* at *9. The Court also discussed the CAPPS litigation in its recitation of the facts and explained that CAPPS had sought "to enjoin the Department 'from implementing, applying, or taking any action whatsoever pursuant to the final regulations,' and to vacate the entirety of the final rule." *Id.* at *3 (citing ¶ 242 of CAPPS's complaint). The Court did not at that time decide the appropriate remedy for the unlawful delays. *Id.* at *25.

On September 14, 2018, the Court held a joint status conference in *Bauer* and this case. In an exchange between the Court and CAPPS's counsel with respect to the appropriate remedy in *Bauer*, CAPPS emphasized that permitting the rule's arbitration and class-waiver provisions to go into effect would impact schools' contractual relationships with "all of their students," an outcome that could not be reversed "in many instances." Tr. 16:8-9. The Court responded that "the same is true with respect to the student borrowers, that if the statute of limitations runs and they haven't brought their lawsuit because they have to arbitrate, they're out of luck." *Id.* 16:12-15. CAPPS's counsel disagreed, contending that if he "were representing a plaintiff borrower," he "might lodge [his] suit," and then ask the court to hold any motion to compel arbitration in abeyance during the pendency of litigation over the Borrower Defense Rule. *Id.* 16:17-21.

In his response, Borrowers' counsel began by directly addressing the proposed workaround for the "plaintiff borrower[s]" to whom CAPPS's counsel had referred:

> [F]irst I agree certainly CAPPS is entitled to its day in court. But these rules going into effect would not deprive CAPPS of [its] day in court. The rules not going into effect will have the effect of completely depriving plaintiff borrowers of their day in court, because statute of limitations will go. And the suggestion that the plaintiffs should now within the next two weeks suddenly file cases on the hope that sometime they'll be allowed to sue seems a burden on individuals much – that doesn't balance against the states – I'm sorry, the schools.

*Id.* 47:23-25, 48:1-8.[1] The Court took the issue of an appropriate remedy in *Bauer* under advisement. It also lifted the stay in the instant litigation, *id.* 58:16-17, and granted the Borrowers' motion to intervene as of right under Federal Rule of Civil Procedure 24(a), Tr. 56:17-24. The Court stated that, as it had explained in its *Bauer* opinion," the "private borrowers have had standing," and it "d[id not] know why they wouldn't have standing in the CAPPS case as well." Tr. 37:16-19.

At this time, Bauer and Del Rose are considering their legal options to recover for injuries sustained as a result of NEIA's fraud and other wrongdoing. 2d Bauer Decl. ¶ 5, ECF No. 68-1; 2d Del Rose Decl. ¶ 6, ECF No. 68-2. The Borrowers' earlier plans to sue NEIA and EDMC as defendants who might possibly pay a judgment are no longer viable. However, the Borrowers are trying to determine whether Dream Center may be held liable on their claims against NEIA and EDMC pursuant to the sale agreement, conditions that ED may place or may have placed on Dream

---

[1] CAPPS wrongly suggests that plaintiffs' counsel misled the Court in this colloquy. *See* Mot. for Recons. 4 (citing Tr. 48:1-3, ECF No. 63). Counsel was plainly referring back to the same "plaintiff borrower[s]" to whom CAPPS's counsel had referred in the generic sense using the very same language. Had Borrowers' counsel been referring to his own clients when referring generically to "plaintiffs" whose claims were at risk of expiring in the two weeks following the status conference, the undersigned most assuredly would have sought a preliminary injunction in *Bauer* long ago.

Center, or by operation of other legal doctrines governing successor liability and the corporate form. As noted above, when the Borrower Defense Rule takes effect, it will apply to Dream Center as a participant in the Title IV program.

## ARGUMENT

Under Federal Rule of Civil Procedure 54(b), this Court may reconsider its interlocutory orders at any time before entry of judgment. Although reconsideration is appropriate "as justice requires," *Lyles v. Dist. of Col.*, 65 F. Supp. 3d 181, 188 (D.D.C. 2014), a court generally will grant a motion for reconsideration "only when the movant demonstrates: (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." *Parker v. John Moriarty & Assocs.*, 221 F. Supp. 3d 1, 2 (D.D.C. 2016).

CAPPS contends that justice requires reconsideration of the Borrowers' intervention motion for three reasons: (1) the bankruptcy of NEIA and EDMC, Mot. for Recons. 4-7, (2) the Borrowers' "improper" reliance on pending borrower defense applications to justify an interest in the rule, *id.* at 9, and (3) CAPPS's "clarification" that the rule is severable, *id.* CAPPS's motion should be denied.

## I.    CAPPS Has Provided No Legal Basis for Reconsidering Intervention as of Right.

**A.**   The recent bankruptcy of NEIA and EDMC does not change the fact that the Borrowers have a "legally protected interest" in this case, as required for intervention as of right under Rule 24(a). *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015); *see also Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) (stating that a proposed intervenor as of right "need not show anything more than that it has standing … in order to demonstrate the existence of a legally protected interest for purposes of Rule 24(a)"). The Borrowers acknowledge that as a result of the bankruptcy of NEIA and EDMC—and those

entities' consequent loss of Title IV funding—the Borrower Defense Rule would not assist them in bringing claims in court against these entities. Moreover, at this time, the Borrowers are considering but have not decided whether to file suit against Dream Center on a theory that it has assumed the liabilities of EDMC for their injuries.[2]

Either way, though, the Borrowers *do* continue to have a legally protected interest in seeing that the Borrower Defense Rule takes effect as soon as possible. As this Court recognized in *Bauer*, the Borrowers have filed borrower defense applications with ED, wish to benefit from the procedural safeguards in the rule, and would be entitled to automatic forbearance if the rule were to take effect. 2018 WL 4353656, at *9. The Borrowers recently confirmed that their applications remain pending and that they continue to receive only time-limited forbearance on their loans. 2d Bauer Decl. ¶¶ 6-7, 9; 2d Del Rose Decl. ¶¶ 8-11. They also made clear that their applications for relief apply to federal loans that are not and never have been in default. 2d Bauer Decl. ¶ 8; 2d Del Rose Decl. ¶¶ 6-7. So, for example, the Borrowers have a stake in whether CAPPS is entitled to a preliminary injunction of 34 C.F.R. § 685.222, as amended by the rule, on CAPPS's theory that borrower defense relief is available only as a defense in collection proceedings. *See* P.I. Memo. 38-39, ECF No. 65; *see also* 2d Bauer Decl. ¶¶ 10-12 (stating an interest in having a group-based relief process for NEIA students); 2d Del Rose Decl. ¶¶ 12-14 (same). In sum, the Borrowers'

---

[2] CAPPS suggests that the Borrowers were "in the best position" to inform the Court of the bankruptcy of NEIA and EDMC and suggests that they should have done so. Mot. for Recons. 4. In retrospect, although it did not affect the Borrowers' position in *Bauer* that they had standing to challenge the delays in their entirety or that they have standing to intervene in this case to defend the rule in full, the Borrowers' counsel should have brought this information to the Court's attention at an earlier date. However, as this Court recognized at the hearing, events in this case have had a way of "overtak[ing]" the litigation, Tr. 13:20-21, and the Borrowers were attempting— indeed, still are attempting—to understand the implications of the bankruptcy. It is also notable that ED, which terminates Title IV funding to schools that declare bankruptcy, did not raise any questions about the Borrowers' continued ability to pursue their claims in *Bauer* or to intervene in this case.

interest in the borrower defense provisions is an independent ground supporting the Borrowers'

standing, and thus a legally protectable interest in the case. The new evidence of bankruptcy to

which CAPPS points does not call that conclusion into doubt.[3]

      **B.** CAPPS contends that the Borrowers' interest in the borrower defense provisions is

insufficient for three reasons. First, it contends that Borrowers improperly relied on their pending

borrower defense applications for the first time in their reply in support of the motion to intervene.

Mot. for Recons. 9. As an initial matter, CAPPS's objection in this regard does not amount to a

claim of "clear error" by this Court, which CAPPS would have to show to warrant reconsideration.

*Parker*, 221 F. Supp. 3d at 2. And it comes far too late. If CAPPS thought that something in the

Borrowers' reply was not appropriate, it could have moved to strike or to file a surreply or have

raised the point in the hearing that led to the Court's ruling on intervention. It did not, and more

than a year has passed since that reply was filed. The circumstances of the Borrowers' intervention

are also highly relevant: The Borrowers intervened on short notice in *CAPPS* at a time when

CAPPS had sought a preliminary injunction only for the arbitration and class-waiver provisions

and had given every indication that it viewed the rule as non-severable. The Borrowers had no

reason to believe that they needed to prove standing for each and every provision challenged by

CAPPS in order to intervene. Indeed, in their reply, they requested that if CAPPS later conceded

---

      [3] The bankruptcy also does not cast doubt on this Court's jurisdiction when it decided the Borrowers' claims in *Bauer*. At the time they filed suit, the Borrowers had Article III standing to challenge the delay notices in their entirety based on their interests in the arbitration and class-waiver provisions and the borrower defense provisions. Although one of their interests had changed at the time that the case was decided, their APA claims were indisputably not moot because the delay notices still prevented them from benefiting from the new procedural and substantive rights they would have had if the borrower defense provisions had gone into effect. *See Cleveland Cty. Ass'n for Gov't by People v. Cleveland Cty. Bd. of Comm'rs*, 142 F.3d 468, 475 (D.C. Cir. 1998) ("A question is moot only if intervening events make it impossible to grant the prevailing party effective relief." (quotation marks omitted)).

severability, they be given a chance to bolster their demonstration of standing with new evidence in the record. Borrowers' Reply in Supp. of Mot. to Intervene 6 n.1. The Borrowers have done that through new declarations in opposition to CAPPS's renewed preliminary injunction motion, which show that they have affirmative borrower defense claims and an interest in the group-based relief process. *See supra* p. 8-9. In addition, they submitted evidence in *Bauer* of their specific interest in defending the borrower defense provisions.

Second, CAPPS appears to argue that the borrower defense provisions in which the Borrowers have an interest—that is, those applicable to presently existing loans—are not the provisions that CAPPS challenges in the litigation. *See* Mot. for Recons. 10-11. Again, CAPPS asserts no "clear error" on the Court's part that would warrant reconsideration. Specifically, in its complaint, CAPPS challenged "*how* borrowers may assert defenses for all Title IV loans, regardless of when the loan was disbursed." Compl. ¶ 67 (citing changes to 34 C.F.R. § 685.206(c)). And it complained of a "group borrower defense process" to be set forth in 34 C.F.R. § 685.222, *see* 81 Fed. Reg. at 76,085 (new 34 C.F.R. § 685.222(g), (h))—the very same section that CAPPS acknowledges as the source of "claim filing, notice, and procedural review" standards for existing and future Direct Loans, *see* Mot. for Recons. 11.[4]

Third, CAPPS claims that the Borrowers' intervention based on an interest in the borrower defense provisions is unwarranted because the Borrower Defense Rule and a 2018 proposed rule to replace it are "similar[]" in respects relevant to the Borrowers. *Id.* Similarities between the Rule and the proposed replacement are beside the point. If the Borrower Defense Rule does not go into effect, the Borrowers will be left with the *1995 regulations* on the books. CAPPS's argument is

---

[4] CAPPS's contention elsewhere in the motion that CAPPS does not challenge 34 C.F.R. § 685.222, *see* Mot. for Recons. 10, is directly contradicted by other parts of the motion and the complaint itself, *see supra*.

all the more faulty in light of ED's recent announcement that it will not issue a replacement rule by November 1, so the earliest the proposed rule could go into effect would be the 2020-21 school year. *See* ED Opp'n to P.I. Mot. 2, ECF No. 69.

**C.** CAPPS's new position on severability of the rule likewise does not warrant reconsideration. This argument was available to CAPPS more than a year ago, and it did not pursue it. CAPPS's initial request for a preliminary injunction for a limited portion of the rule does not, as CAPPS contends (at 8), evince a belief that the rule need not stand or fall together at final judgment. It merely indicates that CAPPS thought itself unable to demonstrate irreparable harm from the rule as a whole at this early stage of litigation. CAPPS also ignores that at the September 2018 hearing before this Court, CAPPS's counsel doubled down on a position of non-severability. Specifically, this Court observed that CAPPS had treated the rule as "all non-severable," Tr. 46:22, which gave the Borrowers standing to defend the entire rule. CAPPS's counsel, far from disavowing that position, instead stated: "I think that it's very difficult to break it up." *Id.* 46:25, 47:1. The Court thus granted intervention at a time when the Borrowers had standing to defend the entire rule. It can, of course, determine at a later date if the Borrowers' defense has been mooted in some respects by CAPPS's change in position, but it need not, and should not, do so on a motion for reconsideration of intervention. In addition to the fact that the standard for reconsideration has not been met, it remains possible that ED could take the position that some provisions are not severable, as could CAPPS. CAPPS's motion for reconsideration notably does not state that the Rule *is* severable in every respect, only that CAPPS "does not claim—and has not claimed—that the 2016 Rule is non-severable." Mot. for Recons. 9.

**II.     If This Court Reconsiders Intervention, Permissive Intervention Remains Appropriate.**

CAPPS contends that permissive intervention is not appropriate as an alternative basis for the Borrowers' participation in this case. The Borrowers believe that the Court need not reach this argument because intervention as of right was correctly granted. However, if the Court *does* revisit this question, it should reject CAPPS's argument on permissive intervention for the reasons stated in the Borrowers' initial motion to intervene and reply and in their arguments above. *See* Borrowers' Mot. to Intervene, ECF No. 22; Borrower Reply in Supp. of Mot. to Intervene, ECF No. 44; *supra* p. 8-11. CAPPS's arguments in this regard are simply a reprise of its earlier ones, and they remain meritless.

## CONCLUSION

For the foregoing reasons, this Court should deny CAPPS's motion for reconsideration of the order granting the Borrowers' motion to intervene.

Respectfully submitted,

Toby R. Merrill
D.D.C. Bar No. 0006
PROJECT ON PREDATORY STUDENT LENDING,
LEGAL SERVICES CENTER OF HARVARD LAW
SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
(617) 522-3003
tomerrill@law.harvard.edu

Julie A. Murray
D.C. Bar No. 1003807
Scott L. Nelson
D.C. Bar No. 413548
Adam R. Pulver
D.C. Bar No. 1020475
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
jmurray@citizen.org

*Counsel for Defendant-Intervenors*

Dated: October 5, 2018