**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CALIFORNIA ASSOCIATION OF
PRIVATE POSTSECONDARY
SCHOOLS,

    Plaintiff,

v.

BETSY DEVOS, in her official capacity as
Secretary of Education, and THE
DEPARTMENT OF EDUCATION

    Defendants.

Civil Action No. 1:17-cv-999 (RDM)

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 2

    I.    The Final Rule Does Not Expressly Conflict With The FAA ......................................... 2

    II.    The Final Rule Imposes A Valid Condition On The Receipt Of Federal Funds ............. 5

    III.    The HEA Does Not Clearly And Unambiguously Foreclose The Final Rule ................ 7

    IV.    The Final Rule Is Not Arbitrary And Capricious ............................................................ 9

CONCLUSION .............................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Cases**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
   570 U.S. 205 (2013) ................................................................................................ 5-6

*Ass'n of Private Colls. & Univs. v. Duncan*,
   870 F. Supp. 2d 133 (D.D.C. 2012) .............................................................................. 8

*City of Philadelphia v. Attorney Gen. of United States*,
   916 F.3d 276 (3d Cir. 2019) .......................................................................................... 6

*Cole v. Burns Int'l Sec. Servs.*,
   105 F.3d 1465 (D.C. Cir. 1997) .................................................................................... 7

*CSX Transp., Inc. v. Ala. Dep't of Revenue*,
   562 U.S. 277 (2011) ...................................................................................................... 8

*Encino Motorcars, LLC v. Navarro*,
   136 S. Ct. 2117 (2016) ................................................................................................ 11

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ......................................................................................... 2, 3, 4

*FBME Bank Ltd. v. Mnuchin*,
   249 F. Supp. 3d 215 (D.D.C. 2017) ............................................................................ 11

*Inv. Co. Inst. v. CFTC*,
   720 F.3d 370 (D.C. Cir. 2013) .................................................................................... 10

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
   137 S. Ct. 1421 (2017) .................................................................................................. 4

*Nat'l Mining Ass'n v. U.S. Dep't of Interior*,
   251 F.3d 1007 (D.C. Cir. 2001) .................................................................................. 12

*New York v. United States*,
   505 U.S. 144 (1992) ...................................................................................................... 6

*SEC v. Chenery Corp.*,
   332 U.S. 194 (1947) .................................................................................................... 11

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) ...................................................................................................... 8

**Statutes**

9 U.S.C. § 2 ............................................................................................................................ 2

20 U.S.C. § 1070 .......... 1

20 U.S.C. § 1087d(a) .......... 7

20 U.S.C. § 1087d(a)(6) .......... 1, 7

20 U.S.C. § 1087d(a)(1)-(5) .......... 7

**Other Authorities**

Federal Student Loan Portfolio,
https://studentaid.ed.gov/sa/about/data-center/student/portfolio .......... 1

**INTRODUCTION**

The U.S. Department of Education ("Department") loans billions of dollars to students annually to help them cover the educational costs of attending post-secondary schools. Title IV of the Higher Education Act of 1965 ("HEA"), 20 U.S.C. § 1070 *et seq.*, authorizes several federal student loan programs, the largest of which is the William D. Ford Federal Direct Loan Program ("Direct Loan Program"). Through the first quarter of Fiscal Year 2019, the Department held well over a trillion dollars in outstanding Direct Loans to more than 34 million recipients.[1]

The Department administers the Direct Loan Program by entering into Program Participation Agreements ("PPAs") with post-secondary schools that allow students to receive federal financial aid. In order to safeguard this massive investment of federal funds into the higher education industry, Congress has placed certain conditions on the receipt of such funds and delegated significant latitude to the Secretary of Education ("Secretary") to establish the terms of the PPAs, including the authority to include in such agreement any provisions that the "Secretary determines are necessary to protect the interests of the United States and to promote the purposes of" the Direct Loan Program. 20 U.S.C. § 1087d(a)(6). Based on this express grant of authority, and the Department's determination that institutions had used predispute arbitration and class action waiver provisions to "thwart timely efforts by students to obtain relief" from abusive practices, costing "the taxpayers many millions of dollars in losses," the Department promulgated a rule ("Rule" or "Final Rule") that, *inter alia*, amended PPAs to limit the use of such provisions. Final Rule, AR-A at 100. As explained in the Department's opening summary judgment brief, ECF No. 93-1 ("Defs.' SJ Mem."), the Final Rule's predispute arbitration and class action waiver provisions are fully consistent with the Department's authority under the HEA.

---

[1] https://studentaid.ed.gov/sa/about/data-center/student/portfolio

Plaintiff disagrees, arguing that the Final Rule conflicts with the Federal Arbitration Act ("FAA").  But as explained in the Department's opening brief, the Rule does not invalidate or declare unenforceable any arbitration agreement, and Plaintiff has identified no case conclusively finding that an otherwise valid condition on the receipt of federal funds is unlawful based on conflict with the FAA.  Plaintiff's challenges to the Final Rule thus fail, and the Court should grant summary judgment for Defendants.

## ARGUMENT

### I.     The Final Rule Does Not Expressly Conflict With The FAA

In its opening brief, the Department explained that the Final Rule does not conflict with the express terms of the FAA because it does not render any private arbitration agreement "[in]valid, []revocable, [or un]enforceable," 9 U.S.C. § 2.  *See* Defs.' SJ Mem. at 8-10.  This is true even though the Supreme Court has recognized that the FAA generally establishes a "liberal federal policy favoring arbitration."  *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).  The Rule merely requires, as a condition of continued receipt of Title IV funding, that schools not rely upon or seek from certain students (*i.e.*, those who are recipients of a Direct Program Loan) certain types of arbitration agreements (*i.e.*, predispute agreements to arbitrate claims before they arise) to resolve certain claims (*i.e.*, "borrower defense" claims relating to the "making of the borrower's Direct Loan or the provision of educational services for which the loan was provided").  *See* Defs.' SJ Mem. at 4-5; *see also* Final Rule, AR-A at 1-2.  It does not "ban arbitration entirely," and has no application to claims that are unrelated to the Department's Title IV investment or to any "post-dispute agreement" to arbitrate between student and school.  AR-A at 105.  Because the Rule does not itself impose any legal impediment to private entities' ability to contract for and enforce arbitration agreements, it does not expressly conflict with the FAA or

any Supreme Court case interpreting that statute. Plaintiff's opposition and reply brief, ECF No. 99 ("Opp."), merely repeats the arguments of its opening brief and offers no basis to avoid this conclusion.

For example, Plaintiff asserts that federal agencies may not, "in the absence of a 'clear and manifest congressional command to displace the FAA,' invalidate or otherwise discriminate against arbitration agreements." Opp. at 4 (quoting *Epic Sys. Corp.*, 138 S. Ct. at 1624). But Plaintiff's reliance on *Epic Systems* is misplaced. In that case, various employers had entered into arbitration agreements with their employees, which the employees then tried to avoid by arguing that the agreements violated the National Labor Relations Act ("NLRA")—*i.e.*, they sought a judicial determination that the agreements were invalid and unenforceable. The Court declined to invalidate the agreements because, by its plain terms, the FAA required it to "enforce, not override, the terms of the arbitration agreements." *Epic Sys. Corp.*, 138 S. Ct. at 1623. The employees attempted to avoid this outcome by arguing that, in their case, the FAA was overridden by the NLRA. In other words, they argued that the two statutory commands were in conflict and "[could ]not be harmonized," and thus that the NLRA repealed the FAA by implication. *Id*. at 1624. Emphasizing that a party asserting such an argument "bears the heavy burden" of showing Congress' "clear and manifest" intention "that such a result should follow," the Court found no such intent in the NLRA. *Id*. Here, on other hand, the Department is not seeking to invalidate or prevent enforcement of any private arbitration agreement. Nothing in *Epic Systems* addresses the circumstances under which an agency may impose a condition on the receipt of federal funds that discourages the use of predispute arbitration agreements as applied only to disputes arising out of the federal program.

Plaintiff also argues that the FAA establishes an "equal-treatment" principle and that the Supreme Court has "invalidated laws that evince hostility to arbitration, even when such laws are facially neutral." Opp. at 3.  But this principle has not been applied to a funding condition that merely disincentivizes, but does not prohibit, the use of certain arbitration agreements.  As the Supreme Court has recognized, a facially neutral rule—*i.e.*, one that at least theoretically applies to invalidate contractual provisions other than arbitration agreements—nonetheless violates the FAA where it is "too tailor-made to arbitration agreements—subjecting them, by virtue of their defining trait, to *uncommon barriers*." *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1427 (2017) (emphasis added).  The lesson is that a rule can conflict with the FAA, even where it does not expressly single out arbitration agreements, if it places a legal impediment on the enforceability of contracts that "have the defining features of arbitration agreements," *id*. at 1426; not that a funding condition that imposes no such "uncommon barrier[]," *id*. at 1427, conflicts with the FAA.

For similar reasons, Plaintiff's invocation of *Epic Systems* for the proposition that courts "must be alert to new devices and formulas that would achieve" the result of "declaring arbitration against public policy" falls flat.  Opp. at 5.  In the very next sentence, the Supreme Court found that "a rule seeking to declare individualized arbitration proceedings off limits is . . . just such a device." *Epic Sys. Corp.*, 138 S. Ct. at 1623.  Once again, the Supreme Court's concern was with legal *rules* that work in practice to render contracts that have the defining features of arbitration "unenforceable." *Id*.  The Final Rule does no such thing.  And Plaintiff's attempt to argue the opposite because the Rule requires "*this Court* to rule that it is permissible to disfavor a certain category of arbitration agreements," Opp. at 6, fails for the same reason:  the FAA prohibits not judicial sanction of funding conditions that disincentivize predispute arbitration agreements, but

4

legal rules that themselves make arbitration agreements (or agreements that share the "defining features" of arbitration agreements) invalid or unenforceable. It requires no "unduly restrictive interpretation of the FAA" to reach this conclusion, Opp. at 5—only faithful application of the Supreme Court precedents on which Plaintiff relies.

## II. The Final Rule Imposes A Valid Condition On The Receipt Of Federal Funds

Plaintiff also argues that the Rule "cannot be sustained as a permissible spending condition." Opp. at 9. Although this is framed as a distinct argument, it rises and falls with the contention that the Rule conflicts with the FAA. *See id.* (arguing that the Rule is invalid as a funding condition because it "conflicts with the explicit congressional policy on the subject of [arbitration]"). But for the reasons already explained, the FAA does not expressly prohibit the Department from imposing the predispute arbitration and class action waiver provisions, which, as explained in the Department's opening brief, are consistent with the Department's authority under the HEA. *See* Defs.' SJ Mem. at 11, 13-15. And while Plaintiff's brief invokes Supreme Court cases generally favoring arbitration, it identifies no such case invalidating a funding condition based on conflict with the FAA. It is thus Plaintiff's position – not the Department's – that breaks new ground.

In the absence of any cases actually invalidating funding conditions based on conflict with the policy underlying (but not even the letter of) federal law, Plaintiff resorts to hypothetical examples that Plaintiff contends would constitute "[im]permissible spending condition[s]." Opp. at 10. But these purely imagined examples of invalid funding conditions only underscore the dearth of case law on the subject, and are an insufficient substitute for the Supreme Court's actual word on this issue: "As a general matter, if a party objects to a condition on the receipt of federal funding, its recourse is to decline the funds." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l,*

*Inc.*, 570 U.S. 205, 214 (2013); *see also New York v. United States*, 505 U.S. 144, 167 (1992) (funding condition is valid so long as it bears "some relationship to the purpose of the federal spending"). Plaintiff offers no persuasive reason for finding that the Rule violates the *de minimis* limitations that the Supreme Court has imposed on the "limits of spending conditions." Opp. at 10; *see* Defs.' SJ Mem. at 10-13.

Plaintiff's reliance on cases in the "sanctuary-cities context," Opp. at 10 n.5, is similarly unavailing. As Plaintiff admits, those cases found that an executive funding condition was invalid because it was not authorized by the statutory provisions on which the agency relied in imposing the funding condition. *See, e.g.*, *City of Philadelphia v. Attorney Gen. of United States*, 916 F.3d 276, 291 (3d Cir. 2019). They do not address the issue of whether a funding condition that *is* authorized by one statutory provision is unlawful based on a purported conflict with a different statutory provision (or national policy). As discussed both below and in its opening brief, the Department determined that the predispute arbitration and class action waiver provisions protect the interests of the United States and promote the purposes of the federal Direct Loan Program, such that it had statutory authority to include them in the Rule.

Ultimately, Plaintiff and the Department agree that an agency's funding condition is valid so long as it is "reasonably related to the asserted federal interest." Opp. at 11. Here, the predispute arbitration and class action waiver provisions are reasonably related to the Department's legitimate and congressionally-conferred authority to administer the Direct Loan Program. *See* Defs.' SJ Mem. at 11 (citing Final Rule, AR-A at 100). As such, and without an express conflict with the FAA, the provisions should be upheld as valid conditions on the receipt of federal funds.

**III.     The HEA Does Not Clearly And Unambiguously Foreclose The Final Rule**

As explained in the Department's opening brief, the Final Rule is consistent with the authority granted by the HEA to regulate the terms of PPAs.  *See* Defs.' SJ Mem. at 13-15.  Once again, Plaintiff seeks to rebut this conclusion by relying on a purported conflict between the Rule and the "liberal federal policy favoring arbitration agreements." Opp. at 12 (citation omitted).  But the FAA is irrelevant to the question of whether the Rule is consistent with the Department's authority under the HEA.  On this point, Plaintiff's opposition and reply brief offers no new argument supporting the conclusion that the Rule "exceeds the Department's statutory authority." Opp. at 12.

Plaintiff once again invokes the *ejusdem generis* canon, *see* Opp. at 12-13, but as the Department explained in its opening brief, that canon does not support Plaintiff's argument because the catch-all provision on which the Department relies, 20 U.S.C. § 1087d(a)(6), confers authority that is different in kind than the authority conferred by 20 U.S.C. §§ 1087d(a)(1)-(5). *See* Defs.' SJ Mem. at 14-15.  In particular, subsection (6) confers a grant of *future* authority for the Secretary to add new conditions to PPAs in addition to the terms Congress specified in subsections (1)-(5).  *Id*.  Plaintiff offers no response to this argument, instead contending that because subsections (1)-(5) of 20 U.S.C. § 1087d(a) do not speak to "arbitration or the authority to displace or undermine the FAA," subsection (6) should not be accorded such a meaning.  Opp. at 13.  As discussed above, however, the Rule neither displaces nor undermines the FAA, so the Department did not require statutory language authorizing such action to promulgate the Rule.  But even more fundamentally, *ejusdem generis* operates only to "limit[] general terms which follow specific ones to matters *similar to* those specified." *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1471 (D.C. Cir. 1997) (emphasis added).  Plaintiff, in arguing that the Section 1087d(a)(6) catch-

all cannot address arbitration because none of the preceding terms address arbitration, would instead require that the meaning of the catch-all term be defined to have the *same* meaning as the preceding terms, a result that, among other things, runs headlong into the presumption against superfluity. Because Section 1087d(a)(6) is simply addressed to "dissimilar subject" matter as the terms that proceed it, *ejusdem generis* (particularly as Plaintiff attempts to apply it) "has no application" here. *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 277, 295 (2011).[2]

Plaintiff similarly errs in contending that the Final Rule is inconsistent with Section 1087d(a)(6) on its own terms because that statutory provision "authorizes only requirements that 'are necessary to protect the interests of the United States,'" and, according to Plaintiff, any regulation that creates any disincentive to arbitration cannot, because of the FAA, be in the interests of the United States. Opp. at 13. But Congress has the authority to establish federal policy above and beyond the policy reflected in the FAA. The full text of Section 1087d(a)(6) authorizes the Secretary to include in PPAs any provision she determines is necessary to "protect the interests of the United States and to promote the purposes of" the Direct Loan Program. The Department made and justified this determination in the Rule. *See* AR-A at 97-106. Accordingly, the Rule is consistent with the HEA, notwithstanding Plaintiff's preferred interpretation of the "interests of the United States."

---

[2] Plaintiff also invokes the presumption against hiding elephants in mouseholes. *See* Opp. at 13 (citing *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457 (2001)). Yet again, this contention is premised on the notion that the Rule conflicts with the "liberal federal policy favoring arbitration." *Id*. In any event, "[n]either the elephant nor the mousehole is present here." *Ass'n of Private Colls. & Univs. v. Duncan*, 870 F. Supp. 2d 133, 148 (D.D.C. 2012). The Department promulgated the Rule to protect the public interest and promote the purposes of the Direct Loan Program—"as the statute empowers it to do." *Id*.

**IV.     The Final Rule Is Not Arbitrary And Capricious**

As the above and the Department's opening brief establish, the Rule's predispute arbitration and class action waiver provisions are consistent with the Department's authority under the HEA and are not prohibited by the FAA.  In addition, as explained in the opening brief, the Department provided a reasoned basis for promulgating these provisions sufficient to withstand deferential arbitrary-and-capricious review.  *See* Defs.' SJ Mem. at 15-19.  Plaintiff's argument to the contrary consists primarily of an attempt to shoehorn its statutory argument (that the Rule conflicts with the FAA) into an arbitrary-and-capricious challenge.  *See* Opp. at 15 ("The conspicuous irrationality at the heart of the administrative action is that the Department adopted a view of arbitration agreements and class action waivers" that conflicts with the "evaluations" of such agreements by "Congress and the Supreme Court.").  But that statutory argument fails, and Plaintiff's arbitrary-and-capricious argument ultimately boils down to its disagreement, as a matter of policy, with the predispute arbitration and class action waiver provisions.  Such disagreement is no basis upon which to set aside the Final Rule.

Plaintiff contends that the Department "failed to adequately grapple" with the purported disconnect between the predispute arbitration and class action waiver provisions and the pro-arbitration policy reflected in the FAA.  Opp. at 16.  But this is incorrect.  The Department did consider the intersection of its policy and the FAA, and came to a conclusion with which Plaintiff disagrees:  that the Rule does not conflict with the FAA, and, given the Department's findings regarding the abuse of predispute arbitration agreements and class action waivers by institutions of higher education (particularly Corinthian Colleges, Inc. ("Corinthian")), and the corresponding impact on the student borrower population and the public fisc, that the Rule was justified as a means of protecting the interests of the United States and promoting the purposes of the Direct

Loan Program. *See* Final Rule, AR-A at 97 ("Corinthian's widespread use of [class action] waivers and mandatory arbitration agreements resulted in grievances against Corinthian being asserted not against the now-defunct Corinthian, but as defenses to repayment of taxpayer-financed Direct Loans, with no other party from which the Federal government may recover any losses."); *id.* at 98 (emphasizing that the Rule is consistent with the FAA because it "do[es] not invalidate any arbitration agreement, whether already in existence or obtained in the future" or "control the conduct of purely private transactions between private parties . . unrelated to the Direct Loan Program"); *id.* ("The HEA gives the Secretary the authority to modify the terms of the PPA as needed to protect Federal interests and promote the objectives of the program. . . . The Department issues these regulations pursuant to that authority, to regulate conduct well within the 'scope of the federally funded program' at issue here."). Plaintiff's "policy disagreement" with these conclusions does not make them arbitrary and capricious. *Inv. Co. Inst. v. CFTC*, 720 F.3d 370, 380 (D.C. Cir. 2013).

Next, Plaintiff repeats its critique of the Department's reliance on a Consumer Financial Protection Bureau ("CFPB") study on arbitration agreements, contending that the Department "failed adequately to consider the fact that the CFPB study arose in a very different context." Opp. at 16. But the Department considered this very concern and determined that the CFPB study nonetheless provided a useful comparison because "[s]chools participating in the Direct Loan Program not infrequently provide or arrange private student loans to their students," and many private loan borrowers "may also have Direct Loans, and in any case can be expected often to share characteristics with Direct Loan Borrowers." Final Rule, AR-A at 100. Plaintiff might not be satisfied by this response, but because the Department addressed its concern in a "reasoned

10

manner," there is no basis to find its analysis on this issue arbitrary and capricious. *FBME Bank Ltd. v. Mnuchin*, 249 F. Supp. 3d 215, 222 (D.D.C. 2017).[3]

Plaintiff also suggests the Department "failed adequately to consider the schools' reliance interests." Opp. at 17. But as explained in the Department's opening brief, the Department did consider such interests and found them to be relatively insignificant because the Rule "address[es] only future conduct by the institution" and "impose[s] no fine or liability on a school that has already obtained" predispute arbitration agreements or class action waivers. Final Rule, AR-A at 99. This is a far cry from the situation in *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016), upon which Plaintiff relies, which concerned an agency's change in policy affecting private parties' longstanding substantive statutory rights. *See id.* at 2126 (where industry had relied for "decades" on an agency policy treating automobile service advisors as exempt from a federal overtime pay statute, and those advisors had "negotiated and structured their compensation plans against this background understanding," finding agency's "summary discussion" of its decision to change course insufficient). In the circumstances of this rulemaking, the Department's consideration of reliance interests was adequate.

Finally, Plaintiff repeats the contention that a remand "is warranted" for the Department to assess the impact of the Supreme Court's *Epic Systems* decision on its determination regarding the legality of the Rule. *See* Opp. at 17-18. But as noted in the Department's opening brief – and conceded by Plaintiff – *Epic Systems* reflected "longstanding precedent" and had nothing to do with funding conditions. Defs.' SJ Mem. at 19. Nothing in the Department's reasoning suggests that it would reach a different conclusion in light of *Epic Systems*. *See, e.g.*, Final Rule, AR-A at

---

[3] Because the agency's stated reasoning regarding the CFPB study was sufficient, Plaintiff's invocation of *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), Opp. at 16-17, is erroneous.

98 (explaining that the Final Rule does not conflict with the FAA because it merely "impose[s] a condition on the participation by a school in this specific Federal program," and does not "bar schools from using any kind of predispute arbitration agreements, or class action waivers, so long as they pertain only to grievances unrelated to the Direct Loan Program").  Notably, the cases Plaintiff cites in support of its argument that a remand is appropriate addressed the situation in which an agency moved for a voluntary remand based on its own determination that reassessment was warranted.  *See* Pl.'s Mem. in Supp. of Mot. for Summ. J. at 27, ECF No. 83-1.  No such remand is required where, as here, there is not "a significant chance that but for [its conclusion regarding the lack of case law addressing the intersection of federal regulations and the FAA] the agency might have reached a different result."  *Nat'l Mining Ass'n v. U.S. Dep't of Interior*, 251 F.3d 1007, 1014 (D.C. Cir. 2001).

## **CONCLUSION**

For the foregoing reasons, and those stated in the Department's brief supporting its motion for summary judgment, the Court should enter summary judgment for Defendants and deny Plaintiff's motion for summary judgment.

Dated:  May 10, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ R. Charlie Merritt*
KAREN S. BLOOM
Senior Counsel
R. CHARLIE MERRITT (VA Bar # 89400)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
919 East Main Street, Suite 1900

                                  Richmond, VA 23219
                                  (202) 616-8098 (phone)
                                  (804) 819-7417 (fax)
                                  robert.c.merritt@usdoj.gov

*Counsel for Defendants*