# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CALIFORNIA ASSOCIATION OF
PRIVATE POSTSECONDARY SCHOOLS,

       *Plaintiff*,

  v.

ELISABETH DeVOS, Secretary, U.S.
Department of Education, *et al.*,

       *Defendants*,

MEAGHAN BAUER AND STEPHANO
DEL ROSE,

       *Defendant-Intervenors*.

Civil Action No. 17-999 (RDM)

## MEMORANDUM OPINION AND ORDER

Intervenors Meaghan Bauer and Stephano Del Rose ("the Intervenors") are former students at the New England Institute of Art ("NEIA") who took out large student loans in reliance on what they contend were false promises by NEIA.  *See* Dkt. 22-1; Dkt. 22-2.  On November 1, 2016, the Department of Education ("the Department") promulgated new rules that would have made it easier for Bauer and Del Rose to seek administrative relief from their debts and to bring class action claims on behalf of other former NEIA students against NEIA.  *See generally* Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, William D. Ford Federal Direct Loan Program, and Teacher Education Assistance for College and Higher Education Grant Program, 81 Fed. Reg. 75,926 (Nov. 1, 2016) (to be codified at 34 C.F.R. scattered sections) ("the 2016 Rule").  The California Association of Private Postsecondary Schools ("CAPPS") filed this lawsuit challenging those

1

new rules as unlawful and seeking to enjoin their implementation.  Dkt 1.  In response to this

suit, the Department announced that it would delay implementation of the challenged rules, *see*

Dkt. 20, and, in response to the Department's action, Bauer and Del Rose then filed a separate

suit challenging that delay as unlawful, *see Bauer v. DeVos,* 17-1330 (filed July 6, 2017).  They

also moved to intervene in this case based on their concern that the Department's decision to

stay implementation of the 2016 Rule might signal less than full resolve to defend the rule in the

present action.  Dkt. 22.  The Court granted their motion to intervene.  *See* Dkt. 63 at 56–57

(Sept. 14, 2018 Hrg. Tr.).  CAPPS now moves for reconsideration of that decision in light of

new evidence.  Dkt. 64.

      For the reasons explained below, the Court will deny CAPPS's motion but will order

that the Intervenors show cause why the Court should not *now* revoke their status as intervenors

for lack of standing.

# I. BACKGROUND

      The history of the development of and challenges to the 2016 Rule and the Department's

interim and final delay rules and the related litigation is set forth in this Court's prior opinions

denying CAPPS's motion for a preliminary injunction, *Cal. Ass'n of Private Postsecondary*

*Schools v. DeVos*, 344 F. Supp. 3d 158, 163–66 (D.D.C. 2018) ("*CAPPS I*"), and resolving the

parties' cross-motions for summary judgment in *Bauer v. DeVos*, 325 F. Supp. 3d 74, 78–87

(D.D.C. 2018).  For purposes of the present motion, an abridged version—with a focus on the

procedural history of this case—will suffice.  The regulations at the center of this lawsuit were

promulgated on November 1, 2016 and are referred to as the "Borrower Defense Regulations" or

the "2016 Rule."  81 Fed. Reg. at 75,926.  Among other things, these regulations prohibit schools

"participating in the [Federal] Direct Loan Program from obtaining" or relying upon a

borrower's "waive[r] [of] his or her right to initiate or participate in a class action lawsuit," and "from requiring students to engage in internal dispute processes before contacting accrediting or government agencies" regarding the claims forming the basis of such a class action lawsuit. ("Arbitration and Class Action Waiver Provision"). *CAPPS I*, 344 F. Supp. 3d at 166 (quoting 81 Fed. Reg. at 75,926–27). Under the pre-existing rules, borrowers could apply for relief from their loans on the ground that their educational institutions had engaged in certain forms of misconduct. *Id.* 165–66. The 2016 Rule also contained a provision amending the standards and procedures applicable to the Department's adjudication of these so-called borrower defense applications ("Borrower Defense Provision"). *Id.* Although not relevant to CAPPS's motion for reconsideration, challenged portions of the 2016 Rule also require "financially risky institutions [to be] prepared to take responsibility for the losses to the government for discharges of and repayments for [f]ederal student loans ('Financial Responsibility Provision')" and "adopt[] certain disclosure obligations for institutions 'at which the median borrower has not repaid in full, or made loan payments sufficient to reduce by at the least one dollar the outstanding balance of the borrower's loans received at the institution ('Repayment Rate Provision')." *Id.* at 166 (quoting 81 Fed. Reg. at 75,926–27).

CAPPS filed this lawsuit on May 24, 2017 challenging the 2016 Rule in its entirety. Dkt. 1. Eight days after filing suit, CAPPS moved for a preliminary injunction precluding portions of the 2016 Rule from taking effect. Dkt. 6. In response, the Department issued a rule staying implementation of most, but not all, provisions of the 2016 Rule pursuant to 5 U.S.C. § 705, *see* Dkt. 20, which allows agencies to "postpone the effective date of an action taken by it" if it concludes that "justice so requires." That action by the Department prompted CAPPS to withdraw its motion for a preliminary injunction, *see* Dkt. 21, and prompted Meaghan Bauer and

Stephano Del Rose to move to intervene as defendants in this action so they could defend the 2016 Rule, *see* Dkt. 22.  Eight states and the District of Columbia also sought to intervene to defend the 2016 Rule.  Dkt. 16.  Around that same time, Bauer and Del Rose filed a separate lawsuit, *Bauer v. DeVos*, l7-cv-1330 (D.D.C. filed July 6, 2017), challenging the Department's rule staying the 2016 Rule's implementation and the interim and final rules delaying implementation of the 2016 Rule.

The Intervenors based their motion to intervene on the fact that they had taken out large Federal Direct Loans to attend NEIA, which, they contend, misrepresented the education and employment opportunities it would provide to them.  *See* Dkt. 22 at 9–10; Dkt. 22-1; Dkt. 22-2. They explained that they stood to benefit from the 2016 Rule in two ways.  First, they sought to bring a class action lawsuit against NEIA and its parent company, Education Management Corporation ("EDMC"), for various violations of Massachusetts law, and that lawsuit would have been barred or channeled into individual arbitration proceedings unless the Arbitration and Class Action Waiver Provision of the 2016 Rule was allowed to take effect.  *See* Dkt. 22 at 13. Second, they explained, albeit in a footnote in their reply brief, that they had each filed borrower defense applications with the Department as a defense to repayment and would benefit from the 2016 Rule's more borrower-friendly procedures for adjudicating those administrative applications.  *See* Dkt. 44 at 12 n.1.

The Court stayed the *CAPPS* case pending resolution of cross-motions for summary judgment in *Bauer* addressing the lawfulness of the Department's delay in implementing the 2016 Rule.  Then, in *Bauer*, the Court held that the Department's § 705 stay rule and the Department's subsequent interim and final delay rules were invalid.  *Bauer*, 325 F. Supp. 3d at 79.  On September 14, 2018, the Court held a status conference with the parties in both *CAPPS*

and *Bauer* to address how the litigation in both matters should proceed in light of that holding. *See* Dkt. 63. During the status conference, the Court granted the Intervenors' motion to intervene in the *CAPPS* action. *See id.* at 56–57 (Sept. 14, 2018 Hrg. Tr.). The Court found that the Intervenors had standing to defend the 2016 Rule, notwithstanding the limited nature of their interests, because CAPPS sought to invalidate the rule in its entirety, and CAPPS confirmed that characterization of its challenge on the record. *See id.* at 46–47. In other words, if CAPPS was successful in challenging any portion of the 2016 Rule, and if the remaining provisions were held non-severable, as CAPPS maintained at that time, the entire rule would fall. *Id.* The Court further concluded that the Intervenors had satisfied the requirements of Federal Rule of Civil Procedure 24(a), *see id.* 56–57, which provides for intervention as a matter of right, Fed. R. Civ. P. 24(a). With respect to the States' separate motion to intervene, the Court explained that it would permit the States to participate fully as amici in the preliminary injunction litigation and that, as a result, resolution of the motion to intervene would serve no material purpose at that stage of the proceeding. *Id.* at 40, 53–54. Based on that understanding, the States agreed to withdraw their motion to intervene without prejudice, Dkt. 61, but continued to participate fully as amici, *see* Dkt. 67.

On September 22, 2018, CAPPS moved for reconsideration of the Court's order granting the Intervenors leave to intervene and simultaneously moved for a preliminary injunction to prevent the Department from implementing the 2016 Rule. Dkt. 64; Dkt. 65. CAPPS premised its motion for reconsideration on the "newly discovered" fact that NEIA and EDMC had filed for bankruptcy while the motion to intervene was pending (but after briefing was complete) and that the bankruptcy, according to CAPPS, deprived the Intervenors of standing to intervene in this case. *See* Dkt. 64.

The Department and the Intervenors filed briefs opposing CAPPS's motion for a preliminary injunction, Dkt. 68; Dkt. 69, and the States that had previously sought to intervene participated as amici defending the rule, Dkt. 67.  The Court denied the motion for preliminary injunction, concluding that, with respect to three of the four challenged provisions, CAPPS had not demonstrated a likelihood of success on the merits because it had not made an adequate showing that it was likely to have standing and, in any event, had not established that any of its members would suffer irreparable injury.  *CAPPS I*, 344 F. Supp. 3d at 176, 178, 181.  With respect to the fourth—the Arbitration and Class Action Waiver Provisions—the Court held that CAPPS had not shown that any of its members would suffer irreparable injury if the preliminary injunction were denied.  *Id.* at 170–73.[1]

## II.  LEGAL STANDARD

Any order or decision that is not a final judgment "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).  District courts have "broad discretion to hear a motion for reconsideration brought under Rule 54(b)," *Isse v. Am. Univ.*, 544 F. Supp. 2d 24, 29 (D.D.C. 2008), but should grant motions for reconsideration "only as justice requires."  *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (quoting *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22–23 (1st Cir.1985)).  Typically, the Court should not grant a motion to reconsider "unless the movant presents either newly discovered evidence or errors of law that

---

[1]  The Court denied the preliminary injunction on the basis of the Department's arguments that CAPPS had failed to show irreparable injury, as well as a finding that CAPPS had not shown a likelihood of success on the merits with respect to Article III standing.  In light of the fact that arguments sufficient to deny CAPPS's motion for a preliminary injunction were either raised by the Department—i.e., a lack of irreparable harm—or required *sua sponte* consideration—i.e., a lack of Article III standing—nothing turned on whether the Intervenors participated as intervenors or, like the States, as amici.  The Court, accordingly, noted but did not resolve CAPPS's motion for reconsideration on the expedited preliminary injunction schedule.  *See CAPPS I*, 344 F. Supp. 3d at 164 n.2.

need correction." *Davis v. Joseph J. Magnolia, Inc.*, 893 F. Supp. 2d 165, 168 (D.D.C. 2012).

"The burden is on the moving party to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 893 F. Supp. 2d 258, 268 (D.D.C. 2012) (citing *Husayn v. Gates*, 588 F. Supp. 2d 7, 10 (D.D.C. 2008)).

### III.  ANALYSIS

CAPPS comes to Court with newly discovered—and significant—evidence: while the motion to intervene was pending, NEIA and EDMC filed for bankruptcy.  The Intervenors concede that this bankruptcy filing rendered their "earlier plans to sue NEIA and EDMC as defendants who might possibly pay a judgment . . . no longer viable." Dkt. 71 at 10.  Indeed, as institutions that had filed for bankruptcy, NEIA and EDMC were no longer subject to the 2016 Rule.  *See* 20 U.S.C. § 1002(a)(4)(A).  CAPPS argues, then, that because the Intervenors could not have brought suit against NEIA and EDMC at the time this Court decided the motion to intervene for reasons wholly independent of the challenged Arbitration and Class Action Waiver Provision, they lacked standing to intervene. Dkt. 64 at 12–13.  And, CAPPS argues, because the decision permitting them to intervene was predicated on the false premise that the challenge to the Arbitration and Class Action Waiver Provision of the 2016 Rules was the only thing standing between the Intervenors and a class action lawsuit, justice requires reconsideration—and reversal—of that decision. *Id.* at 10.

Parties who seek to intervene as a matter of right under Federal Rule of Civil Procedure 24(a) must satisfy Article III's standing requirement. *See Deutsche Bank Nat. Trust Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013).  Standing requires "a personal stake in the outcome of the controversy [sufficient] to warrant . . . federal-court jurisdiction.' *Chamber of Commerce*

*v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).  "[T]he irreducible constitutional minimum of standing contains three elements": (1) an "injury in fact;" (2) a "causal connection between [that] injury and the conduct complained of; and (3) that injury is redressable "by a favorable decision" in the lawsuit in question.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

The Court agrees with CAPPS that the Intervenors' plan to sue NEIA and EDMC did not support their standing to intervene under Rule 24(a) at the time the Court granted their motion. The Intervenors assert that they are now "considering but have not decided whether to file suit against" a company that purchased some of EDMC's assets on a possible successor liability theory.  Dkt. 71 at 12.  Standing, however, requires an injury that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (quotations omitted).  Because the Intervenors fail to assert an actual or imminent plan to bring a suit that would have been thwarted by a class action waiver or arbitration clause, the Court is unconvinced that the Intervenors' "consider[ation]" of possible litigation sufficed to support Article III jurisdiction.

The Intervenors, however, offer an alternate ground for their standing.  Specifically, they point to the fact that they have "filed borrower defense applications with" the Department and would therefore benefit from certain "procedural safeguards in the [2016] [R]ule, and would be entitled to automatic forbearance if the rule were to take effect."  Dkt. 71 at 12.  Those procedural safeguards include an expanded fact-finding process in which the Department considers its own record and "[a]ny additional information or argument" that it may obtain; a requirement the Department identify and provide to the borrower, upon request, any such records; and a requirement that, in the case of a full or partial denial, the Department provide the

borrower a "written decision" explaining "the reasons for the denial, the evidence that was relied upon, any portion of the loan that is due and payable to the Secretary, and whether the Secretary will reimburse any amounts previously collected." 34 C.F.R. § 685.222(e)(4)(ii).  Under the 2016 Rule, moreover, the Department grants automatic forbearance of the student loan in question upon receipt of the borrower defense application if the borrower is not in default. *Id.* § 685.222(e)(2)(i).  Finally, the 2016 Rule creates procedures by which the Department could resolve borrower defense applications for groups of students affected by the same course of conduct by an institution.  *See id.* § 685.222(f).  And, those new group processes apply to loans, like the Intervenors', that were disbursed prior to July 1, 2017.  *Id.* § 685.206(c)(2) ("A defense claim under this section must be asserted, and will be resolved, under the procedures in § 685.222(e) to (k)," which includes the group process).

CAPPS does not address the Intervenors' claim that denial of the procedural safeguards pertaining to the adjudication of a single borrower defense application—including the requirement that the Department provide a written justification for any denial and that it provide evidence it relied upon to the borrower upon request—constitutes a sufficient injury to sustain their standing.  *See* Dkt. 64; Dkt. 73.  Instead, CAPPS argues—albeit only in its reply brief to which the Intervenors have not responded—that the Intervenors do not have a sufficient interest in the forbearance and group adjudication provisions contained in the Borrower Defense Provision of the 2016 Rule to establish their standing.[2]  Dkt. 73 at 2–3.  Even putting aside CAPPS's failure to address the procedural safeguards that Intervenors risked losing if the 2016

---

[2]  In its opening brief, CAPPS argues that the Intervenors cannot premise their standing on the changes to the *substantive* standards on which borrower defense applications are adjudicated because those new standards apply only to loans that, unlike the Intervenors' loans, were disbursed on or after July 1, 2017.  Dkt. 64 at 17.  The Intervenors, however, make no argument that such substantive changes to the borrower defense rules provide the basis for their standing. *See* Dkt. 71.

Rule was set aside—which might alone be support their standing—the Court is unconvinced by CAPPS's arguments.

CAPPS first contends that the automatic forbearance provisions do not afford the Intervenors any benefit because their loans are already in forbearance. As their declarations indicate, however, both Intervenors were entitled to forbearance only until April 2019. Dkt. 68-1 at 2 (2d Bauer Decl. ¶ 9). And, the 2016 Rule appears to provide automatic forbearance until the completion of the borrower defense application process. *See* 34 C.F.R. § 685.222(d)(2) (providing for automatic forbearance upon receipt of a borrower defense application if loans are not in default); *id.* § 685.222(e)(4)(ii) (requiring a written denial to inform the borrower that "if any balance remains on the loan, the loan will return to its status prior to the borrower's submission of the application").

CAPPS next argues that the group adjudication procedures for borrower defense applications do not afford the Intervenors a sufficiently concrete interest to establish standing because group adjudication is subject to the Secretary's discretion. Dkt. 73 at 3. But the fact that group adjudication is discretionary does not mean that it cannot form the basis of the Intervenors' standing; the denial of a purely discretionary benefit can support Article III standing if the plaintiff claims that an agency based its decision on an improper legal ground. *See FEC v. Akins*, 524 U.S. 11, 25 (1998) ("Agencies often have discretion about whether or not to take a particular action. Yet those adversely affected by a discretionary agency decision generally have standing to complain that the agency based its decision upon an improper legal ground."). The loss of the opportunity to even seek a discretionary benefit, by the same logic, can constitute a cognizable injury.

The Intervenors rely on the declarations they provided in support of their opposition to

CAPPS's motion for a preliminary injunction in order to demonstrate that they had a concrete

interest in defending the 2016 Rule.   *See* Dkt. 71 at 12 (citing Dkt. 68-1 at 2–3 (2d Bauer Decl.

¶¶ 10–12 ); Dkt. 68-2 at 2–3 (2d Del Rose Decl.¶ 12–14)).   They asserted, for example, an

interest in group-based resolution of their borrower defense applications, *id.*, and asserted that

their loans were subject to a time-limited forbearance that could extend throughout the

administrative process if the 2016 Rule was allowed to take effect, Dkt. 68-1 at 2 (2d Bauer

Decl. ¶¶ 6–7, 9); Dkt. 68-2 at 2 (2d Del Rose Decl. ¶¶ 8–11).[3]   Given the "particularized interest"

that the Intervenors had in their borrower defense applications, a denial of such procedural rights

constituted an "injury in fact" for Article III purposes.   *See Lujan*, 504 U.S. at 572–73 & nn. 7–8

(explaining that plaintiffs have standing "to enforce a procedural requirement the disregard of

which could impair a separate concrete interest of theirs" and giving as an example "the

procedural requirement for an environmental impact statement before a federal facility is

constructed next door to them"); *see also Am. Fuel & Petrochem. Mfgrs. v. EPA*, 937 F.3d 559,

592–93 (D.C. Cir. 2019) (finding plaintiffs to have standing where EPA failed to follow its own

Endangered Species Act procedures where organizational members had "aesthetic and

recreational interests" in observing the species at issue).

CAPPS contends, however, that the Intervenors' assertions about their borrower defense

applications could not have supported their standing to intervene because Intervenors invoked

---

[3]  CAPPS also argues that the borrower defense applications cannot provide the basis for the Intervenors' standing because then-proposed 2018 regulations contain the same procedural safeguards.  Dkt. 64 at 11.  But, as the Intervenors point out, if the 2016 Rules were struck down at the time the Court permitted the Intervenors to intervene, it would be the *1994 regulations,* not then-proposed 2018 regulations, that would have governed their borrower defense applications. Dkt. 71 at 14-15.  Accordingly, it is from *that* baseline that the Court must evaluate the injury claimed by the Intervenors.  Indeed, the 2018 regulations do not take effect until July 1, 2020. *See* Student Assistance General Provisions, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 84 Fed. Reg. 49,788, 49,788 (Sept. 23, 2019) (to be codified at 34 C.F.R. parts 668, 682, 685).

that interest for the first time in their reply in the initial round of briefing.  Dkt. 64 at 15–16.  The

fact that an argument was raised in reply, and thus arguably forfeited, is not the sort of error that

warrants reconsideration of a prior court order.  *See Said v. Nat'l R.R. Passenger Corp.*, 390 F.

Supp. 3d 49, 50 (D.D.C. 2019) ("In determining whether 'justice requires' reversal of a prior

interlocutory order, courts assess circumstances such as 'whether the court patently

misunderstood the parties, made a decision beyond the adversarial issues presented, made an

error in failing to consider controlling decisions or data, or whether a controlling or significant

change in the law has occurred.'" (quoting *In Def. of Animals v. Nat'l Inst. of Health*, 543 F.

Supp. 2d 70, 75 (D.D.C. 2008))).  CAPPS, moreover, had ample opportunity to address the

arguments raised in the Intervenors' reply when the Court entertained argument on the motion to

intervene at the September 12, 2018 status conference.  *See* Dkt. 63 at 46–47.

  CAPPS further argues that, even if the Intervenors had standing to defend provisions

creating the procedural safeguards for borrower defense applications, they did not have standing

to intervene to defend the entirety of the 2016 Rule.  That argument is premised on CAPPS's

contention in its motion for reconsideration that it was not challenging the procedural safeguards

introduced in the 2016 Rule.  *See* Dkt. 64 at 15–16.  CAPPS now argues that the procedural

safeguards for borrower defense applications are not among the portions of the rule that CAPPS

challenged.  But that contention is inconsistent with the relief sought in its complaint and the

representations counsel made to the Court at the September 14, 2018 status conference.  Dkt. 63

at 46–47; *see also* Dkt. 1 at 75–76 (Compl. ¶ 242) (seeking vacatur of the final regulations and a

declaration that the "Borrower Defense, Financial Responsibility, Repayment Rate, and

Arbitration and Class Action provisions were promulgated" in violation of 5 U.S.C. § 706(2)).

At that status conference, the following exchange occurred:

> THE COURT: But as I also explain in my opinion [in *Bauer*], in your complaint the relief you seek is striking down the entire rule because you say its all non-severable.  So it does in fact give them an interest in all of it, because you've said it all rises or falls together.
>
> COUNSEL:  I think it's very difficult to break it up.

Dkt. 63 at 46–47.  Shortly after that exchange, the Court granted the motion to intervene.  *Id.* at 56–57.  Thus, at the time the motion for reconsideration was decided, CAPPS's position was that success in its lawsuit would require invalidation of precisely the provisions that the Intervenors had standing to defend, affording them standing to intervene.

The Court will therefore deny CAPPS's motion to reconsider the Court's September 14, 2018 order permitting the Intervenors to intervene in this case.

*   *   *

The Court's obligation to assure itself of its own jurisdiction, however, continues throughout the litigation, *see Reynolds v. Sheet Metal Workers, Local 102*, 702 F.2d 221, 223 (D.C. Cir. 1981), and events occurring since CAPPS filed its motion for reconsideration call into question the Intervenors' ongoing interest in the proceeding.  In denying CAPPS's motion for a preliminary injunction, the Court held that *CAPPS* had failed to show a likelihood of success on the merits because it had failed to offer evidence that any identified member school had standing to challenge any of the provisions in the 2016 Rules other than the Arbitration and Class Action Waiver Provisions.  *CAPPS I*, 344 F. Supp. 3d at 176, 178, 181.  CAPPS then amended its complaint to challenge only the Arbitration and Class Action Waiver Provisions, Dkt. 82, and it omitted the portion of its prayer for relief that had previously requested that the Court declare that "the entirety of the Final Rule is contrary to the Constitution;" declare that "the final rule is arbitrary and capricious within the meaning of 5 U.S.C. § 706(2)(A);" and enjoin the Department

from "implementing, applying, or taking any action whatsoever pursuant to the final regulation," *compare* Dkt. 82 *with* Dkt. 1 at 75–76 (Compl. ¶ 242), *see also* Minute Order (Jan. 18, 2019) (granting motion for leave to amend).  Given the narrowed scope of CAPPS's amended complaint, the Court must consider whether Intervenors continue to have a legally cognizable interest in the litigation.

The Court will, accordingly, order the Intervenors to show cause why the Court should not revoke their status as intervenors going forward on the ground that they no longer have a legally cognizable interest in the case.

## CONCLUSION

For the foregoing reasons, Plaintiffs motion for reconsideration, Dkt. 64, is **DENIED.** The Intervenors are hereby **ORDERED** to show cause, on or before December 9, 2019, why the Court should not *now* revoke their status as intervenors for lack of standing.  CAPPS and the Department of Education shall file their responses, if any, to the Intervenors' filing on or before January 10, 2020.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: November 18, 2019